366 F.3d 774
 Richard K. LATMAN; Bettina L. Latman, Plaintiffs-Appellants,
v.
Virginia BURDETTE, Trustee, Defendant-Appellee, and
Bankruptcy Appeals Clerk, Real-party-in-interest.
Richard K. Latman; Bettina L. Latman, Plaintiffs-Appellees,
v.
Virginia Burdette, Trustee, Defendant-Appellant, and
Bankruptcy Appeals Clerk, Real-party-in-interest.
 No. 02-35538.
 No. 02-35545.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted October 7, 2003.
 Filed April 29, 2004.
 As Amended June 8, 2004.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED Lawrence K. Engel, Seattle, WA, for the appellants-cross appellees.
 Alan J. Wenokur, Seattle, WA, for the appellee-cross appellant.
 Appeal from the United States District Court for the Western District of Washington, John C. Coughenour, Chief Judge, Presiding. CV-01-01374-JCC.
 Before TROTT, FISHER, and GOULD, Circuit Judges.
 GOULD, Circuit Judge:
 
 
 1
 Appellants Richard and Bettina Latman and cross-appellant Virginia Burdette, the Latmans' bankruptcy trustee, appeal an order of the United States District Court for the Western District of Washington. The district court affirmed in part and reversed in part an order of the United States Bankruptcy Court for the Western District of Washington that had granted the bankruptcy trustee's motion to surcharge the Latmans' bankruptcy exemptions to account for funds not properly disclosed in the Latmans' bankruptcy filings. Holding that the bankruptcy court's surcharge remedy was a permissible equitable remedy under the Bankruptcy Code, and was not barred by election of remedies or res judicata, we affirm the district court in all respects.
 
 
 2
 * On January 12, 2000, Richard and Bettina Latman filed for Chapter 13 bankruptcy protection. On April 14, 2000, the Latmans dismissed their Chapter 13 petition, and, on April 18, 2000, they re-filed for protection under Chapter 7. During the four-day interval between the dismissal of their Chapter 13 petition and their refiling under Chapter 7, the Latmans sold a 1991 Ford Explorer automobile and a 1996 Sea Ray boat, for which they received a total of $8,500 in cash. Contrary to the requirements of the Bankruptcy Code, on their required Chapter 7 Schedule B submission of personal property owned as of the filing date, the Latmans did not list all of the proceeds of these vehicle sales, but instead listed only $1,500 cash on hand.
 
 
 3
 Noting this discrepancy, the Latmans' bankruptcy trustee (the "Trustee") requested that the Latmans account for the proceeds from the sale of the car and boat. In response to both the Trustee's request and a subsequent bankruptcy court order compelling an accounting of these proceeds, the Latmans gave only inaccurate accountings. The Trustee then commenced an adversary proceeding against the Latmans under 11 U.S.C. § 727 to deny the discharge of their debts. On April 27, 2001, the bankruptcy judge granted the Trustee's motion for summary judgment, finding as a matter of law that the Latmans had failed to explain the loss of the proceeds from the sales of their car and of their boat, had made material false statements on their bankruptcy schedules, had not kept adequate records of their assets and expenditures, and had fraudulently concealed an option to purchase real estate. This ruling was affirmed by the district court on March 6, 2002.
 
 
 4
 The Trustee filed subsequently a Motion to Charge Debtors' Exemptions for Failure to Make Accounting and for Turnover of Property in June 2001 (the "surcharge motion"). This motion contended that the $7,000 in unaccounted for proceeds from the sale of the Latmans' car and boat should be surcharged against the Latmans' 11 U.S.C. § 522(d)(5) "catch-all" or "wild card" exemption, thereby rendering nonexempt a Chrysler Town & Country minivan and engagement ring (or, $7,000 of the value of these items) that the Latmans had previously exempted under § 522(d)(5).[1] The ruling on this motion is challenged on this appeal.
 
 
 5
 During briefing on the surcharge motion, the Trustee discovered another issue, that at the time of their Chapter 7 filing the Latmans had a bank account with First Western National Bank in La Jara, Colorado (the "La Jara account"). As with the $7,000 received by the Latmans from the car and boat sales, the Latmans had not disclosed the existence of a La Jara account, although required to do so by the bankruptcy schedules and by a prior bankruptcy court order requiring disclosure of bank accounts. After discovery of this account, the Trustee subpoenaed First Western National Bank,[2] requesting production of all bank statements for accounts held by the Latmans. From this subpoena, and a subsequent conversation with a bank employee, the Trustee obtained from the bank a spreadsheet showing a balance of $5,813.52 in the La Jara account as of the Latmans' Chapter 7 filing. With this information, the Trustee requested that the bankruptcy court either require the Latmans to tender to the Trustee the $5,813.52 in this account, or alternatively further surcharge the Latmans' § 522(d)(5) "wild card" exemption for this amount.
 
 
 6
 At a hearing on August 10, 2001, the bankruptcy judge granted the Trustee's surcharge motion, ordering (1) that the Latmans' § 522(d)(5) "wild card" exemption be surcharged $7,000, to account for the proceeds of the pre-filing car and boat sale, and (2) that the Latmans turn over $8,013.52[3] in cash to the Trustee, or have this amount also charged against their "wild card" exemption. Although the bankruptcy judge expressed concern about the Trustee's use of a subpoena to obtain evidence of the La Jara account, the bankruptcy judge admitted the evidence that the Trustee had acquired through the subpoena, after the Latmans did not deny ownership of the account.[4]
 
 
 7
 The Latmans appealed the bankruptcy judge's order to the district court, asserting two grounds for error. First, the Latmans maintained that the bankruptcy court improperly admitted a supplemental declaration of the Trustee's counsel in support of the request that the Latmans be ordered to turn over the monies in the First Western National Bank account, because the evidence of the La Jara account attached to the declaration was unauthenticated and hearsay, and was obtained through an invalid subpoena. Second, the Latmans contended that the bankruptcy judge's surcharge remedy was improper, on the theory that it violated the doctrines of election of remedies and res judicata, and was not authorized explicitly in, and was contrary to the purposes of, the Bankruptcy Code.
 
 
 8
 The district court entered an order on April 26, 2002 affirming in part and reversing in part the bankruptcy judge's order, and remanding to the bankruptcy court. The district court affirmed all aspects of the bankruptcy court order, except those dependent upon the evidence of the La Jara account. The district court had no difficulty concluding that the Bankruptcy Code permitted an equitable remedy of surcharge against an exemption to avoid injustice over the undisclosed funds, and the district court held this equitable remedy was not precluded by election of remedies or by res judicata. On the other hand, the district court did not think the evidence of the La Jara account had been submitted in admissible form in the bankruptcy court, and reversed and remanded solely on this issue. Both parties appealed the district court's order. The Latmans continue to urge that an equitable remedy of surcharge against their exemptions was not permissible under the circumstances of this case. The Trustee argues to the contrary, and also cross-appeals contending that the evidence of the La Jara account was properly admitted in the bankruptcy court and that the district court erred by reversing on that issue. We have jurisdiction under 28 U.S.C. § 158(d),[5] and affirm, rejecting both the appeal and the cross-appeal.
 
 II
 
 9
 We review de novo a district court's decision on appeal from a bankruptcy court, and afford no deference to the prior decision of the district court. In re Saxman, 325 F.3d 1168, 1172 (9th Cir.2003). We also review de novo the bankruptcy court's conclusions of law, including its interpretation of the Bankruptcy Code. We review the bankruptcy court's factual findings for clear error. In re Summers, 332 F.3d 1240, 1242 (9th Cir.2003). Under this standard, we accept findings of fact made by the bankruptcy court unless these findings leave the definite and firm conviction that a mistake has been committed by the bankruptcy judge. In re Banks, 263 F.3d 862, 869 (9th Cir.2001).
 
 III
 
 10
 The Latmans advance three theories to attack the bankruptcy court's decision to surcharge their § 522(d)(5) "wild card" exemption. The Latmans assert that the doctrines of election of remedies and res judicata preclude the Trustee from seeking such remedy, and that this remedy exceeded the equitable powers of the bankruptcy court. We address these contentions in turn.
 
 
 11
 * The Latmans first maintain that the doctrine of election of remedies bars the Trustee from further seeking to surcharge their "wild card" exemption because the Trustee had previously elected under 11 U.S.C. § 727(a) to seek a denial of the discharge of their debts as a result of their misconduct. The Latmans argue that the Trustee's prior denial of discharge claim was an election of remedies because it was based in part on the same facts as the Trustee's surcharge motion.
 
 
 12
 The doctrine of election of remedies prevents a party from obtaining double redress for a single wrong. The doctrine "refers to situations where an individual pursues remedies that are legally or factually inconsistent." Alexander v. Gardner-Denver Co., 415 U.S. 36, 49, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). As a general rule, three elements must be present for a party to be bound to an election of remedies: (1) two or more remedies must have existed at the time of the election, (2) these remedies must be repugnant and inconsistent with each other, and (3) the party to be bound must have affirmatively chosen, or elected, between the available remedies. See 25 Am.Jur.2d Election of Remedies § 8("Before an election of remedies becomes operative, there must be two or more remedies, an inconsistency between the remedies, and a choice of one of them.").
 
 
 13
 Applying this rule, the Latmans' election of remedies claim fails because an element is lacking in that the denial of discharge and the subsequent surcharge sought by the Trustee were not repugnant and inconsistent remedies. An elaboration makes this clear. The Bankruptcy Code gives trustees cumulative remedies against improper debtor behavior. See 11 U.S.C. § 704. The remedy of denial of discharge punishes debtors for misconduct in the bankruptcy process. See 11 U.S.C. § 727(a) (providing for denial of discharge under circumstances including where the debtor has acted "with intent to hinder, delay, or defraud a creditor," or "knowingly and fraudulently"); S.Rep. No. 95-598 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5884 (noting that § 727(a)"centers on the debtor's wrongdoing in or in connection with the bankruptcy case"); see also In re Roosevelt, 87 F.3d 311, 317 & n. 12, amended by 98 F.3d 1169 (9th Cir.1996) (stating the primary purpose of § 727(a) is punishment of a debtor who has committed wrongdoing in a bankruptcy case), overruled on other grounds by In re Bammer, 131 F.3d 788, 792(9th Cir.1997) (en banc).
 
 
 14
 Here, the Trustee sought a denial of discharge based on the Trustee's view that the Latmans had made material false statements on their bankruptcy schedules, see 11 U.S.C. § 727(a)(4), had not kept adequate records of assets and expenditures, see 11 U.S.C. § 727(a)(3), had concealed an option to purchase real estate, see 11 U.S.C. § 727(a)(2), and had failed to account for the proceeds of the sale of their car and boat, as well as the monies in the La Jara account, see 11 U.S.C. § 727(a)(5).[6] The bankruptcy court found that all these were proven to be wilful acts, undertaken by the Latmans to evade the requirements of the Bankruptcy Code, and denied discharge. The underlying findings are not clearly erroneous on the record before us, and the propriety of the denial of discharge as a matter of law was previously appealed to the district court but was not appealed to us. The Trustee's denial of discharge is established, and was punitive; but as our analysis below shows, the surcharge served a different purpose and was not an inconsistent remedy.
 
 
 15
 Conversely, the Trustee sought to surcharge the Latmans'"wild card" exemption to make up for the Latmans' apparently wilful failure to account for all their assets, which should have been disclosed in the bankruptcy court and made available for creditors, subject any valid exemptions. The aim of this remedy was not to punish the Latmans, but instead was to protect the creditors of the bankruptcy estate. The surcharge remedy maximized the value of the bankruptcy estate, by ensuring that the Latmans did not exclude from their estate assets valued in excess of their permitted exemptions. By not listing the entire proceeds from the car and boat sale, as well as the monies in the La Jara account, the Latmans were pocketing funds that belonged to creditors, by sheltering more assets than permitted by the exemption scheme of the Bankruptcy Code. See 11 U.S.C. § 522.
 
 
 16
 We find persuasive this statement of the rule adopted by the Eighth Circuit: "Election of remedies has no application where a party has different remedies for the enforcement of different and distinct rights or the redress of different and distinct wrongs." Popp Telcom v. Am. Sharecom, Inc., 210 F.3d 928, 934 (8th Cir.2000) (internal quotation marks omitted); see also 25 Am.Jur.2d Election of Remedies § 18 ("Remedies may be consistent when they can coexist without conflict, serve different interests, or exist for different reasons."). In summary, the denial of discharge and surcharge remedies sought by the Trustee were not repugnant and inconsistent. Each of these remedies served separate purposes and were aimed at enforcing distinct rights under the Bankruptcy Code. We hold that the doctrine of election of remedies did not bar the Trustee from seeking both denial of discharge and surcharge against the Latmans.
 
 B
 
 17
 The Latmans next contend that res judicata barred the Trustee's action seeking a surcharge remedy on grounds that the surcharge action arose from the same transactional nucleus of facts as the Trustee's earlier denial of discharge action. This contention has no merit.
 
 
 18
 The premise behind res judicata is finality. The doctrine bars the re-litigation of issues actually litigated in a prior suit, as well as issues that could have been litigated in that prior action. Federated Dep't Stores v. Moitie, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). We have held that res judicata preclusion "extends only to claims that arise out of the same `cause of action' asserted in [a] prior action." Harris v. Jacobs, 621 F.2d 341, 343 (9th Cir.1980) (per curiam). To determine whether successive lawsuits involve a single cause of action, we consider:
 
 
 19
 (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.
 
 
 20
 Costantini v. Trans World Airlines, 681 F.2d 1199, 1201-02 (9th Cir.1982). However, we have cautioned against the mechanical application of these factors to every case. "Whether causes of action are identical for res judicata purposes — whether `sufficient identity' of issues exists to bar absolutely a subsequent action — cannot be determined precisely by mechanistic application of a simple test." Abramson v. Univ. of Hawaii, 594 F.2d 202, 206 (9th Cir.1979).
 
 
 21
 The unique statutory scheme of the Bankruptcy Code, the special duties of the bankruptcy trustee, and the factual predicates underlying the denial of discharge action and the surcharge action counsel against application of res judicata to bar the Trustee's claim for surcharge. The Bankruptcy Code directs trustees to pursue all available remedies to protect the value of the bankruptcy estate for creditors. See 11 U.S.C. § 704. In performing this duty, a trustee is instructed, if advisable, to "oppose the discharge of the debtor." 11 U.S.C. § 704(6). However, a Chapter 7 trustee typically must bring any objection to discharge within 60 days of the first meeting of the creditors of the bankruptcy estate. Fed. R. Bankr.P. 4004(a).[7]
 
 
 22
 If a trustee were also required to bring a surcharge claim at the same time as an objection to discharge, or else risk having the surcharge claimed barred by res judicata, the trustee would have little time to investigate concealed debtor misconduct, including a failure to disclose sale proceeds or other property such as here occurred. In this setting, an improper application of res judicata would reward the dishonest debtor. The better a recalcitrant debtor hid undisclosed assets, the less likely that a trustee would be able to discover the existence of those assets within the limited time frame to bring a denial of discharge action. A trustee might then be forced to choose between seeking denial of discharge, forgoing a discharge action so as to preserve the right to bring a subsequent surcharge action, or seeking an extension of time, thereby delaying recovery for the creditors of the bankruptcy estate, whose interests a trustee represents. Cf. Western Sys., Inc. v. Ulloa, 958 F.2d 864, 871 (9th Cir.1992) ("Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together.") (emphasis added). Such a perverse choice and odd result is not required by the Bankruptcy Code.
 
 
 23
 The Eighth Circuit has held that in bankruptcy cases "the principle of res judicata should be invoked only after careful inquiry because it blocks `unexplored paths that may lead to truth' and `shields the fraud and the cheat as well as the honest person.'" Lovell v. Mixon, 719 F.2d 1373, 1379 (8th Cir.1983) (quoting Brown v. Felsen, 442 U.S. 127, 132, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979)). We agree with this cautionary statement. In this case, the factual bases asserted in the Trustee's surcharge motion were not fully established when the Trustee sought a denial of discharge of the Latmans' debts. Notably, the Trustee was unable to discover the existence of the La Jara account until approximately July 2001, more than a year after the Latmans' Chapter 7 filing. It is impossible to conclude that the Trustee's denial of discharge and surcharge actions arose out of the same transactional nucleus of facts. Following Lovell, we hold that the purposes of res judicata are not served by barring a bankruptcy trustee from bringing a subsequent surcharge action based in part on facts previously used to support an action for denial of discharge.
 
 C
 
 24
 Finally, the Latmans contend that the surcharge remedy sought by the Trustee exceeded the equitable powers of the bankruptcy court. The Latmans point to the Bankruptcy Code's silence as to the permissibility of either a surcharge remedy, or a general disallowance of a debtor's exemptions. They further assert that surcharge of exemptions punishes debtors by denying protections otherwise guaranteed by the Bankruptcy Code, and is therefore inconsistent with the Bankruptcy Code's purpose of affording debtors a "fresh start." See generally In re Schmitz, 270 F.3d 1254, 1258 (9th Cir.2001).
 
 
 25
 The Latmans are correct that the Bankruptcy Code does not explicitly provide for a remedy of surcharge against a debtor's exemptions in the case of an under-reporting of assets.[8] And, we recognize that in the ordinary case the risk of burdening a debtor's "fresh start" may cause a remedy surcharging exemptions to be improper or unnecessary. However, these concerns do not arise under the facts of this case. The surcharge remedy fashioned by the bankruptcy judge prevented what would otherwise have been a fraud on the bankruptcy court and the Latmans' creditors caused by the Latmans' nondisclosure of monies that should have been listed on the bankruptcy schedules and available for the Latmans' creditors.
 
 
 26
 The surcharge remedy fashioned by the bankruptcy judge in response to the Trustee's motion did not "punish" the Latmans, as they contend, by denying them the full value of their statutory exemptions. Instead, the surcharge remedy protected the Latmans' creditors by preventing the Latmans from sheltering more assets than permitted by 11 U.S.C. § 522. Before the Trustee's discovery of the Latmans' vehicle sales, and the monies allegedly in the La Jara account, the Latmans had already used the full value of their "wild card" exemption to exempt a minivan and an engagement ring. Had the Latmans also been permitted to retain the unaccounted-for proceeds from the sale of their car and boat, the Latmans would effectively have been exempting these funds as part of their "wild card" exemption, despite having already availed themselves of this exemption. In other words, they would have been protecting assets exceeding the permitted value of their statutory exemptions. The surcharge remedy simply ensured that Latmans retained the full value, but no more than the full value, of their permitted exemptions.
 
 
 27
 Bankruptcy courts in other jurisdictions have fashioned similar equitable remedies when faced with exceptional circumstances of debtor misconduct comparable to that committed by the Latmans. In In re Ward, 210 B.R. 531(Bankr.E.D.Va.1997), debtors failed to turn over to the trustee property with value exceeding the $10,000 exemption to which they were entitled. Id. at 532. The trustee sought to set off otherwise exempt funds to account for the property impermissibly retained by the debtors. Id.; see generally 11 U.S.C. § 553 (addressing the issue of setoff for certain mutual debts between a party filing for bankruptcy protection and another party). Finding that the trustee was "not seeking to deny the debtors their exemption," but instead was "simply unwilling to pay the exemption amount over to the debtors when they owe[d] him [the trustee] a greater amount," the bankruptcy court permitted the setoff proposed by the trustee. In re Ward, 210 B.R. at 535.
 
 
 28
 In In re Blint, 20 B.R. 982 (1982), a debtor's personal property was sold at auction. The debtor claimed the entirety of the auction proceeds as exempt, but later admitted that the auction had included the sale of $860 in non-exempt property. Id. at 984. The bankruptcy court held that the $860 should be charged against the debtor's exemptions, finding that "a full restoration of the value of the nonexempt property" would not "inequitably impair" the debtor's exemptions. Id. at 985.
 
 
 29
 These cases demonstrate that bankruptcy courts do not view remedies similar to that sought by the Trustee against the Latmans, and given to the Trustee by the bankruptcy court, to be inequitable or contrary to the "fresh start" purposes underlying the Bankruptcy Code.[9] We are of the same view. Under exceptional circumstances, such as those presented here, surcharge may be the only means fairly to ensure that debtors retain their statutory "fresh start," while also permitting creditors access to property in excess of that which is properly exempted under the Bankruptcy Code.
 
 
 30
 We hold that the bankruptcy court may equitably surcharge a debtor's statutory exemptions when reasonably necessary both to protect the integrity of the bankruptcy process and to ensure that a debtor exempts an amount no greater than what is permitted by the exemption scheme of the Bankruptcy Code. Applying this rule, we conclude that in this case the bankruptcy court did not abuse its discretion in fashioning the surcharge remedy, and that the district court did not err in law by affirming it.
 
 IV
 
 31
 On cross-appeal, the Trustee asserts that the district court erred in reversing the bankruptcy court's decision admitting into evidence the bank records of the Latmans' La Jara account. As the bankruptcy court was the trial court, we review the bankruptcy court's evidentiary rulings for an abuse of discretion. In re Renovizor's, Inc., 282 F.3d 1233, 1237 n. 1 (9th Cir.2002). To reverse on the basis of an erroneous evidentiary ruling, we must conclude both that the bankruptcy court abused its discretion and that the error was prejudicial. See McEuin v. Crown Equip. Corp., 328 F.3d 1028, 1032(9th Cir.2003).
 
 
 32
 The district court reversed the bankruptcy court and found the La Jara account records inadmissible because they were submitted as an attachment to a supplemental declaration of Trustee's counsel, who had no personal knowledge of their authenticity, see Fed.R.Evid. 602, and because the records did not qualify under the business records exception to the hearsay rule, see Fed.R.Evid. 803(6). The district court further found that the bankruptcy court's admission of the La Jara account records prejudiced the Latmans because the bankruptcy court shifted the burden to the Latmans to disprove ownership of the account. The district court also questioned the validity of the subpoena used by the Trustee to obtain the La Jara account records, finding that the subpoena was extra-jurisdictional and issued without notice to the Latmans.
 
 
 33
 We agree with the district court that the bankruptcy court abused its discretion in admitting the Trustee's supplemental declaration attaching the La Jara account records because the declarant, the Trustee's attorney, had no personal knowledge as to the authenticity of the account records. Fed.R.Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); see also United States v. Dibble, 429 F.2d 598, 602 (9th Cir.1970) ("The foundation is laid for receiving a document in evidence by the testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document and, where appropriate, its delivery."). In the declaration, Trustee's counsel stated only that he had been informed by a bank employee responding to counsel's subpoena that the documents at issue were records of the Latmans' account. This statement does not establish that Trustee's counsel could have "actually perceived or observed that which he testifies to." M.B.A.F.B. Fed. Credit Union v. Cumis Ins. Soc'y, 681 F.2d 930, 932 (4th Cir.1982); see also 3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, § 602.02 (2d ed. 2004) ("A witness may testify only about matters on which he or she has first-hand knowledge. The witness's testimony must be based on events perceived by the witness through one of the five senses.").
 
 
 34
 Further, the La Jara account records attached to the Trustee's counsel's declaration were not properly qualified under the business record exception to the hearsay rule as set forth in Rule 803(6). To comply with this rule, the Trustee would have to provide specific testimony or a specific certification that the account records constituted records of regularly conducted activity, as defined by the rule. Fed.R.Evid. 803(6). The Trustee's counsel's declaration does not suffice. The requisite testimony must come from the custodian of the records or "other qualified witness." The Trustee's counsel is neither.[10]
 
 
 35
 Nor did the declaration constitute a proper "certification" under Rule 803(6). Any such certification must comply with the strictures of Federal Rule of Evidence 902(11). See Fed.R.Evid. 803(6). Rule 902(11) requires that a party wishing to offer a record into evidence under that rule must "provide written notice of that intention to all adverse parties, and must make the record and declaration available for inspection sufficiently in advance of their offer into evidence to provide an adverse party with an opportunity to challenge them." Fed.R.Evid. 902(11). There was no such written notice or opportunity to challenge the declaration here. In short, the bank account records were not properly qualified as business records in any way that Rule 803(6) approves. Thus we agree with the district court that there was error in admitting the La Jara account records here.
 
 
 36
 The Latmans were also prejudiced by the admission of the La Jara account records. Once these records were admitted, the bankruptcy court ordered that the Latmans present evidence putting into dispute their ownership of the La Jara account, or the funds allegedly therein. When the Latmans presented no such evidence, the bankruptcy court ordered turnover, or surcharge, of the funds in the account. We agree with the district court that this procedure improperly shifted the burden of proof to the Latmans to disprove ownership of the account. But for the account records submitted in the declaration of Trustee's counsel, it is unlikely that the bankruptcy court would have found there to be sufficient evidence of the existence of the La Jara account to issue an order mandating turnover of the assets allegedly therein. The Latmans were prejudiced by the improper admission of this evidence.[11]
 
 
 37
 We affirm the district court's holding that the bankruptcy court abused its discretion when it admitted into evidence the supplemental declaration of Trustee's counsel attaching hearsay records of the Latmans' La Jara account.[12]
 
 V
 
 38
 We hold that the Trustee was not barred by the doctrines of election of remedies or res judicata from pursuing both a denial of discharge and a subsequent surcharge against the Latmans' Bankruptcy Code exemptions. We also hold that the surcharge remedy fashioned by the bankruptcy judge did not exceed the equitable powers of the bankruptcy court. Finally, we hold that it was an abuse of discretion for the bankruptcy court to admit into evidence the records of the La Jara account based on the declaration of the Trustee's counsel, and that the district court correctly reversed those aspects of the bankruptcy court's August 10, 2001 relying on the admission of these records.
 
 
 39
 The judgment of the district court affirming in part, reversing in part, and remanding the matter to the bankruptcy court is AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 At the time that the Latmans filed under Chapter 7, the "catch-all" or "wild card" exemption in 11 U.S.C. § 522(d)(5) provided that married debtors not claiming a homestead exemption under § 522(d)(1) could exempt up to $17,850 in property not covered by other § 522(d) exemptions. 11 U.S.C. § 522(d)(5) (2000). The Latmans were married and did not claim a homestead exemption
 
 
 [2]
 It appears from the record that the subpoena issued ex parte for the Trustee against the bank, without a copy to the Latmans
 
 
 [3]
 The bankruptcy judge derived this figure by adding the $5,813.52 in the La Jara account, the $1,500 cash-in-hand that had been scheduled from the sale of the car and boat, but which had not been claimed as exempt, and $700 that was in an online stock trading account owned by the Latmans, but which also had not been claimed as exempt. The $2,200 above and beyond the amounts allegedly in the La Jara account were subsequently paid to the trustee, and are not at issue in this appeal
 
 
 [4]
 Upon finding the Trustee's evidence of the La Jara account to be admissible, the bankruptcy judge explicitly ruled in open court that he would give the Latmans ten days to alert him if they had evidence showing that they either did not own this account, or that the balances in the account were different from the amount asserted by the Trustee
 
 
 [5]
 The district court had jurisdiction over the Latmans' appeal from the bankruptcy court under 28 U.S.C. § 158(a). Under 28 U.S.C. § 158(d), we have jurisdiction over "appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) of this section." Although the parties contend that we have jurisdiction over their respective appeals, we have an independent duty to examine the propriety of subject matter jurisdictionIn re Stone, 6 F.3d 581, 583 n. 1 (9th Cir.1993). We have previously considered whether to accept jurisdiction over cases where, as here, a district court partially reverses a final bankruptcy court order, and remands for further proceedings. Compare In re Lakeshore Village Resort, Ltd., 81 F.3d 103, 105 (9th Cir.1996), with In re Bonner Mall P'ship, 2 F.3d 899, 904-05 (9th Cir.1993).
 Our precedent sets a balancing test to determine whether the § 158(d) finality requirement is met when a district court order partially reverses a bankruptcy court order and remands for proceedings. Walthall v. United States, 131 F.3d 1289, 1293 (9th Cir.1997); Lakeshore Village, 81 F.3d at 106. Our test considers "(1) the need to avoid piecemeal litigation; (2) judicial efficiency; (3) the systemic interest in preserving the bankruptcy court's role as the finder of fact; and (4) whether delaying review would cause either party irreparable harm." Lakeshore Village, 81 F.3d at 106.
 Here, a proper application of this test favors finality. The issues before us on appeal are legal in nature, and the bankruptcy court has performed the necessary fact-finding. The risk of creating piecemeal litigation is slim, and review furthers judicial efficiency, as our determination on the correctness of the bankruptcy judge's order may obviate the need for more proceedings. Although we see no risk of irreparable harm to the parties from delaying appellate review, because the bankruptcy and district courts stayed operation of their orders pending appeal, this factor alone does not preclude our review where the other three factors weigh in favor of our jurisdiction. Cf. Lakeshore Village, 81 F.3d at 107-08(finding no jurisdiction where three of the balancing factors weighed against review, and the fourth was neutral).
 
 
 [6]
 The Trustee alleged these four bases as separate predicates, each individually sufficient to support a denial of discharge. The bankruptcy court found all four present. In affirming the bankruptcy court's grant of summary judgment to the Trustee on denial of discharge, the district court rested its decision upon one of these bases, the Latmans' false statements on their bankruptcy schedules. For this reason, the Latmans are misguided in their contention that the Trustee's surcharge and denial of discharge motions rest upon the same factual support. That neither remedy depends exclusively on the same facts further illustrates the inapplicability of the election of remedies doctrine
 
 
 [7]
 In Chapter 7 bankruptcy cases, the Federal Rules of Bankruptcy Procedure require that the first meeting of creditors occur between 20 and 40 days following the order for relief. Fed. R. Bankr.P.2003(a). In the case of a voluntary bankruptcy filing, the Bankruptcy Code provides that the filing of a bankruptcy petition constitutes the order for relief. 11 U.S.C. § 301. Thus, if a trustee is to challenge discharge, objection must normally be made within the 80 to 100 days after the initial filing of the Chapter 7 petition
 
 
 [8]
 The Latmans apparently contend that when assets are hidden by a debtor, the only way to get monetary benefit for the creditors is to order the debtor to turn over the assets. But such a remedy would not be effective if assets withheld from the trustee were subsequently lost or otherwise converted by the debtor for personal benefit
 
 
 [9]
 Though it did not address the issue of surcharging a debtor's exemptions as a remedy for debtor fraud, our Circuit's Bankruptcy Appellate Panel has approved of conditioning allowance of an amended schedule of exemptions on the payment of fees and costs due to a bankruptcy trustee where allowing the exemptions as amended absent that condition would prejudice the trusteesSee In re Arnold, 252 B.R. 778, 788-89 (9th Cir. BAP 2000).
 
 
 [10]
 Under our precedents, the term "other qualified witness" as used in Rule 803(6) "is broadly interpreted to require only that the witness understand the record-keeping system."United States v. Ray, 930 F.2d 1368, 1370 (9th Cir.1990); see also 5 Weinstein's Federal Evidence § 803.08[8][a] ("The phrase `other qualified witness' is given a very broad interpretation. The witness need only have enough familiarity with the record-keeping system of the business in question to explain how the record came into existence in the ordinary course of business."). Even under this liberal standard, Trustee's counsel, who had no regular connection to the La Jara account bank and no knowledge of the account except that gained by hearsay, is not a "qualified witness."
 
 
 [11]
 The Latmans also assert other reasons for reversal of the bankruptcy court's order admitting into evidence the La Jara account records. They maintain that the records were obtained through an invalid subpoena, and that the declaration of Trustee's counsel should be stricken under the advocate-witness rule. As we conclude that the La Jara account records are inadmissible under the Federal Rules of Evidence, absent the testimony or declaration of a proper custodian, we need not address the merits of these further contentions
 
 
 [12]
 On remand to the bankruptcy court the Trustee, in further proceedings consistent with our opinion, and subject to any procedural issues not reached herein, may be able to prove with admissible evidence the existence and prior amount of the undisclosed La Jara account. If so the bankruptcy court after further proceedings may be able to consider the La Jara account in fashioning a final remedy and order