# United States Court of Appeals
## For the First Circuit

No. 11-2042

KENNETH T. MALLEY,

Appellant,

v.

WARREN E. AGIN, Trustee,

Appellee.

APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joan N. Feeney, U.S. Bankruptcy Judge]

Before

Boudin, Circuit Judge,
Souter, Associate Justice,[*]
and Thompson, Circuit Judge.

Michael Van Dam, with whom Gerald Van Dam, Jill Schafter, and Van Daw Law LLP were on brief, for appellant.
Warren E. Agin, with whom Swiggart & Agin, LLC was on brief, for appellee.

August 15, 2012

---

[*] The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**SOUTER, Associate Justice.** In this direct appeal under 28 U.S.C. § 158(d)(2)(A) from the United States Bankruptcy Court for the District of Massachusetts, Kenneth Malley, the debtor in a Chapter 7 liquidation proceeding, see 11 U.S.C. §§ 701-784, appeals from an order issued in reliance on 11 U.S.C. § 105(a) surcharging his interest in property listed as exempt. The issue is whether § 105(a) authorizes a charge against the value of otherwise exempt assets as a remedy for the debtor's wrongful concealment of non-exempt and now unavailable property subject to creditors' claims, and we hold that the bankruptcy court was acting within its statutory authority.

The issue arises in the aftermath of Malley's treatment of the proceeds from the sale of his former marital house, which occurred shortly before filing his Chapter 7 petition. The transaction netted over a quarter of a million dollars, from which he repeatedly declared and swore under oath that he had received nothing, the entire balance having gone to his ex-wife, he said. The trustee of the Chapter 7 bankruptcy estate nonetheless came to believe that some $27,000 of those funds allegedly going to the ex-wife were to be used to discharge Malley's credit card debt, which prompted the trustee to take action against the ex-wife to avoid that disposition. As it turned out, however, Malley's false disclosure had actually hidden his secret receipt of $25,000, which

he claimed he was unable to turn over to the trustee when ordered to do so.

Malley's willful concealment of the funds he received and apparently spent was, of course, a violation of his disclosure obligation under 11 U.S.C. § 521, compounded by continuing misrepresentation, all of which amounted to fraud on the court, the trustee, and the general creditors. When the trustee moved for sanctions, the court denied discharge, as it was authorized to do under 11 U.S.C. § 727, and issued a further order charging the concealed amount, plus the cost of untangling the fraud, against the value of an asset claimed as exempt, and so treated up to that point. The surcharge dwarfs the value of the asset, Malley's interest in a truck used in business, which is the only significant property mentioned in the briefs that Malley might use in making a fresh start in life, one of the bankruptcy scheme's objectives for the benefit of an honest debtor. See, e.g., Perez v. Campbell, 402 U.S. 637, 648 (1971).

The court's surcharge order is challenged here as exceeding the equitable power granted by 11 U.S.C. § 105(a):

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

The nub of the textual argument against the validity of the surcharge is the limitation of the court's authority to issuing orders carrying out the "provisions" of the bankruptcy code. Malley says the restriction should be read narrowly, in contrast, say, to a grant of authority to make good on the general policies or objectives of bankruptcy law, or authority simply to vindicate the requirement of clean hands that equity jurisdiction traditionally insists upon from those who seek its relief.

Thus Malley emphasizes the ostensible inviolability of exempt property under the terms of 11 U.S.C. § 522(c), in its provision that "[u]nless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose . . . before [its] commencement." There being no dismissal here, the court's authority to carry out "provisions" can hardly be exercised by defying this explicit guarantee, Malley says.

But we think Malley's point begs the question. Should Malley's interest in the truck be recognized as "exempted under this section" when its exemption would consummate a fraud on creditors by giving the debtor a greater exemption in fact than the code entitles him to claim in law? We naturally suppose that Congress intended bankruptcy courts to be able to enforce the "provisions" requiring honest disclosure on the part of the debtor, see § 521, and placing limits on exemption claims, see § 522.

-4-

Malley seeks to counter that supposition by directing us to the reasoning of our sister court the Tenth Circuit, in In Re Scrivner, 535 F.3d 1258 (10th Cir. 2008), which emphasized the enumerated and discretionary remedies provided for a debtor's misconduct: denying or revoking discharge of liability for the pre-filing debts, § 727(a)(2), or dismissal of the debtor's petition for relief, § 707(a)(1). See Scrivner, 535 F.3d at 1264. That court followed the interpretive assumption that a statutory enumeration excludes what is left out, and it concluded that adding surcharge to the menu of remedies would be in derogation of the Code and rules, and seeking to add to the remedies enumerated would run afoul of the restriction of § 105(a) power to carrying out "provisions." Id. at 1265.

But we are not persuaded. To start with, the limitation to carrying out "provisions" must be read within the entire section in which it occurs, which in its second sentence authorizes the court sua sponte to take "any action necessary or appropriate... to prevent an abuse of process." We have been given no reason to think that Congress would have intended the spaciousness of this authority to be confined only to sua sponte action as distinct from rulings at a trustee's behest, and it makes sense to read the second sentence's authority to prevent abuse of process as an example of what the first sentence speaks of as action "necessary or appropriate to carry out the provisions by this title." There

-5-

could not be a clearer example of foiling abuse of process than a surcharge order mitigating the effect of fraud in retaining non-exempt assets and thus enhancing the set-aside for a fresh start beyond the amount Congress provided for the honest debtor. Nor can one easily imagine an order more necessary, for although the enumerated remedies of dismissal or denial of discharge penalize the dishonest debtor, they add nothing to the pot for listed creditors, who would otherwise bear the brunt of the fraud. Finally, it should be recalled, this line of reasoning does not enlarge the court's authority beyond "carry[ing] out the provisions" of the code. When the concealed assets have disappeared, as the $25,000 seems to have done, surcharge is an appropriate and necessary way to vindicate § 521, requiring honest disclosure of non-exempt assets, and § 522, regulating the determination of legitimate exemptions for the debtor's benefit. If § 105(a) was not meant to empower a court to issue an order like the one before us, it is hard to see what use Congress had in mind for it.

Accordingly, we endorse the Ninth Circuit's conclusion in Latman v. Burdette, 366 F.3d 774 (9th Cir. 2004), that a debtor's fraudulent concealment of non-exempt assets is an exceptional circumstance in which an offsetting surcharge against otherwise exempt property interests is reasonably necessary "both to protect the integrity of the bankruptcy process and to ensure that a debtor

exempts an amount no greater than . . . the Bankruptcy Code [permits]." Id. at 786; see id. at 785 (citing instances of common bankruptcy court practice adopting this position); 2 Collier on Bankruptcy ¶ 105.01[2] (Henry J. Sommer & Alan Resnick, eds., 16th ed. 2009) (broad reading of § 105(a) power prevails).

Although the Supreme Court has yet to consider today's issue, its most recent interpretation of § 105(a) accords with the conclusion we reach. In Marrama v. Citizens Bank of Mass., 549 U.S. 365 (2007), the Court recognized an unstated limitation on unqualified statutory language, and supported its reading by invoking "the broad authority granted to bankruptcy judges to take any action that is necessary or appropriate 'to prevent an abuse of process' described in § 105(a) of the Code." Id. at 375. And our reasoning sits comfortably with this Circuit's holding in In re Hannigan, 409 F.3d 480, 481-82 (1st Cir. 2005), that a debtor's attempted amendment of a property value as declared in an asset schedule was properly denied for prior bad faith, notwithstanding a federal rule providing a right to amend "as a matter of course," so long as a case remains open.

**Affirmed and remanded.**