**In re James Grove SEELY, III, Gabriela Paul, Debtor(s).**

**No. 2:12–bk–11522–BB.**

United States Bankruptcy Court, C.D. California, Los Angeles Division.

June 5, 2013.

Michael Jay Berger, Beverly Hills, CA, for Debtor.

Aaron De Leest, Los Angeles, CA, Eric P. Israel, Danning, Gill, Diamond & Kollitz LLP, Los Angeles, CA, for Trustee.

Alvin Mar, Los Angeles, CA, Ron Maroko, Los Angeles, CA, for U.S. Trustee.

John J. Menchaca (TR), Los Angeles, CA, Trustee.

## MEMORANDUM DECISION DENYING TRUSTEE'S MOTION FOR TURNOVER OF PROPERTY OF ESTATE AND SURCHARGE OF DEBTORS' EXEMPT ASSETS

SHERI BLUEBOND, Bankruptcy Judge.

Chapter 7 trustee John J. Menchaca (the "Trustee") moved for turnover of $113,802.13 from debtors James Grove Seely, III and Gabriela Paul (jointly, the "Debtors"), representing $58,259.16 in nonexempt cash that was on hand as of the petition date (the "Prepetition Cash") plus an additional $55,542.98 in nonexempt cash that the Debtors received during the pendency of this bankruptcy case (the "Postpetition Cash"). The trustee based his request for turnover on the contention that these funds were improperly expended without an order of this Court.[1] As the funds expended no longer remain in the Debtors' possession, the Trustee sought an order surcharging proceeds of a personal injury settlement that were paid to Debtors' former counsel, Thomas E. Kent, to be held in trust pending further order of this Court (the "Exempt Funds").

For the reasons set forth below, the Court finds that the Trustee failed to establish that any portion of the Prepetition Cash or the Postpetition Cash was improperly expended,[2] and, therefore, that his motion for turnover and to surcharge the Exempt Funds must be denied. Separate orders to this effect will be entered concurrently herewith.

## I

## PROCEDURAL HISTORY

The Debtors filed a voluntary chapter 11 petition commencing the above-entitled bankruptcy case (the "Case") on January 16, 2012. The Debtors' original schedules reflected that, as of the petition date, the Debtors owned, among other things: (1) their primary residence; (2) three pieces of real property held for rental/investment

---

1. Although the Debtors obtained authority from the Court by order entered April 26, 2012 to use cash collateral generated by their rental properties for certain purposes, this order did not apply to the Prepetition Cash or the Postpetition Cash, as these funds did not qualify as cash collateral.

2. The Court offered to continue the hearing on the Surcharge Motion to give the Trustee an opportunity to submit evidence to establish the extent to which the Debtors had expended the Prepetition Cash or the Postpetition Case for non-ordinary course purposes, but, in light of the relatively limited amount likely to have been expended for such purposes and the very real likelihood that Mr. Kent had already absconded with some or all of the Exempt Funds, the Trustee requested, instead, that the Surcharge Motion simply be denied. The Court agreed to grant that request.

purposes; (3) cash in various bank and brokerage accounts totaling $58,259.16; and (4) a personal injury lawsuit in which the Debtors were the plaintiffs (the "Personal Injury Action"). In their original Schedule C, the Debtors claimed exemptions in a portion of the foregoing cash and a portion of the rental income generated by their investment properties.

On May 10, 2012, the Debtors filed a motion for approval of a compromise of the Personal Injury Action. Pursuant to that compromise, the defendants in that action were to pay $275,000 in full and final settlement of the Personal Injury Action. On May 17, 2012, the Century Park East Homeowners' Association (the "HOA") filed a response to the Debtors' compromise motion, noting that the HOA had filed a notice of lien on any settlement proceeds generated by the Personal Injury Action and offering to consent to a release of its lien if the settlement proceeds were held in trust pending further order of the Court rather than paid outright to the Debtors. The HOA noted further in its response to the compromise motion that, contrary to a representation made in that motion, the Debtors had not claimed an exemption in any proceeds generated by the Personal Injury Action. The HOA also filed on May 17, 2012 a motion to convert the case to chapter 7.

On June 4, 2012, the Debtors filed an amended Schedule C. This amended schedule deleted the Debtors' claim of exemption with regard to the Prepetition Cash and asserted an entirely different set of exemptions. Included in the new set of exemptions was a claim of exemption with regard to any proceeds generated by the Personal Injury Action (the "Settlement Proceeds"). The Debtors filed yet another amended version of Schedule C on October 16, 2012. This third version of the Debt-

ors' Schedule C claimed that the entirety of the Settlement Proceeds was exempt.

The Bankruptcy Court granted the Debtors' motion for approval of compromise by order entered June 18, 2012 and directed that the net Settlement Proceeds (which amounted to $270,357.51) be deposited into the client trust account of the Debtors' then counsel, Thomas E. Kent, and held in trust pending further order of the Court.

Negotiations between the Debtors and the HOA followed. The parties attended a mediation before the Honorable Scott Clarkson that culminated in a settlement (the "HOA Settlement") that was read into the record at the end of the mediation. The HOA Settlement provided for, among other things: (1) $125,000 to be paid to HOA out of the Settlement Proceeds in exchange for a release of claims against the Debtors under sections 523 and 727; (2) allowance of an exemption in the balance of the Settlement Proceeds (the "Net Exempt Funds"); (3) dismissal of a preference action then pending against the HOA; and (4) conversion of the Case to chapter 7. Although the Debtors later attempted to repudiate the HOA Settlement, on February 13, 2013, the bankruptcy judge before whom the case was then pending issued an order granting a motion by the HOA to enforce the HOA Settlement and an order converting the case to chapter 7. Thereafter, the case was transferred to Judge Sheri Bluebond, and John J. Menchaca was appointed chapter 7 trustee.

On February 14, 2013, the Debtors filed a motion seeking release of the Settlement Proceeds on the ground that they are exempt (the "Release Motion"). The Trustee opposed that motion on the ground that he was preparing, but had not yet had an adequate opportunity to file, a motion to surcharge the Settlement Proceeds. At the initial hearing on the Release Motion,

the Court continued the hearing to May 1, 2013, so that the Trustee could file a surcharge motion and have it heard concurrently with the Release Motion on May 1.

The Trustee filed a motion to surcharge the Settlement Proceeds on April 5, 2013 [docket no. 340] (the "Surcharge Motion"). The Surcharge Motion was based upon the Trustee's review of the Debtors' monthly operating reports and bank statements. Copies of the Debtors' monthly operating reports were attached as Exhibits 1 through 11 to the Surcharge Motion. Copies of the Debtors' bank statements were attached as Exhibit 12 to the Surcharge Motion.

Based on his review and analysis of Exhibits 11 and 12 to the Surcharge Motion, the Trustee calculated that, during the pendency of the Debtors' chapter 11 case, the Debtors had total receipts, net of deposits attributable to Mr. Seely's social security benefits, inter-account transfers, reimbursements, refunds and returned purchases, of $107,935.23. The Debtors do not dispute that they spent all of these net receipts together with all of the Prepetition Cash during the pendency of their chapter 11 case for total disbursements of $166,194.38 during this period. Of this amount, the Trustee calculated that $52,392.25 should be characterized as authorized disbursements,[3] leaving a total of $113,802.13 that in allegedly improper expenditures. The Trustee sought by way of the Surcharge Motion to recoup these allegedly unauthorized disbursements by surcharging the Debtors' otherwise exempt funds, namely, the Settlement Proceeds.

The Surcharge Motion came on for hearing concurrently with the Release Motion on May 1, 2013. This memorandum sets forth the basis for the Court's decision to deny the Surcharge Motion and grant the Release Motion. Separate orders resolving these motions are being entered concurrently herewith.

## II

## DISCUSSION

As the Ninth Circuit explained in *Latman v. Burdette,* 366 F.3d 774 (9th Cir.2004), "the bankruptcy court may equitably surcharge a debtor's statutory exemptions when reasonably necessary both to protect the integrity of the bankruptcy process and to ensure that a debtor exempts an amount no greater than what is permitted by the exemption scheme of the Bankruptcy Code." *Id.* at 786. However, surcharge of a debtor's exemption is an extraordinary remedy—one that should be applied only where circumstances warrant. A court's decision to impose a surcharge must be supported by specific findings of fact and conclusions of law which must include a finding of misconduct by the debtor, quantifiable damage to the estate and circumstances that make it equitable to require that such damage be reimbursed from the debtor's exemption. *See Lin v. Siegel (In re Law),* 2006 WL 6810960, 2006 Bankr.LEXIS 4847 (9th Cir. BAP Dec. 29, 2006). Absent wrongdoing by the debtor, surcharge should not be imposed.

Here, the Trustee contends that surcharge is warranted because the Debtors expended assets of the estate to pay their personal living expenses while they were in chapter 11 without first obtaining permission from the Court to do so. This argument presupposes that the Debtors

---

**3.** This amount consists of payments to the Office of the United States Trustee, payments to professionals employed in the Case, payments to the HOA and payments to secured lenders.

were required to obtain permission from this Court before making such expenditures. The Trustee acknowledges that, unless the Court orders otherwise, Bankruptcy Code section 363(c)(1) authorizes a chapter 11 debtor in possession to use, sell or lease property of the estate in the ordinary course of business, if the debtor's business is authorized to be operated, but the Trustee contends that, "The Debtors are individuals who are not operating a business. . . ." *Surcharge Motion*, p. 8, lines 21–22.[4] Therefore, the Trustee reasons, the Debtors' personal expenditures were not authorized under section 363(c)(1). In effect, the Trustee seeks to establish a per se rule that, if an individual chapter 11 debtor fails to obtain a court order authorizing him to spend estate assets for post-petition living expenses, his expenditures will be considered wrongful disbursements that can be charged against his exempt assets. The Court rejects this proposition as a matter of law.

▮ Prior to the adoption of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), the post-petition wages of individual chapter 11 debtors were not property of their bankruptcy estates. Individual chapter 11 debtors in possession used post-petition wages to pay their post-petition living expenses, and section 363(c)(1) never came into play. After the effective date of BAPCPA, however, chapter 11 debtors' post-petition wages became property of their bankruptcy estates under section 1115(a), and most debtors were left with no alternative but to use estate property to pay their post-petition living expenses. But must they seek court approval before paying these expenses, or is court approval only required if the proposed expenses do not qualify as ordinary course expenditures?[5] And is the Trustee correct that personal living expenses can never qualify as expenses incurred in the ordinary course of business within the meaning of section 363(c)(1)?

Notably, BAPCPA did not create a procedure or establish a standard for the Court to apply to assess whether or not the Court should approve an individual debtor's request for authority to use estate assets to pay personal living expenses. It is reasonable to assume, therefore, that Congress did not intend to impose a requirement that debtors file such requests. Further, as BAPCPA served to reduce the distinctions between individual chapter 11 cases and chapter 13 cases, it is reasonable

---

**4.** This contention is factually incorrect. The Debtors were, in fact, operating a business—they had three rental/investment properties. However, this inaccuracy is irrelevant on the facts of this case, as the Trustee chose to treat amounts paid to the holders of secured claims against these properties as authorized disbursements and not to seek their recovery. The only disbursements that the Trustee seeks to recover by way of the Surcharge Motion were disbursements made for the Debtors' personal living expenses and not expenses paid in connection with the operation of their business.

**5.** This opinion discusses whether a debtor in possession is *required* to seek court approval before paying personal expenses from estate property. This is an entirely separate question from whether, even if such approval is not required, it would be *advisable* for a chapter 11 debtor to seek such approval. A chapter 11 debtor in possession or his counsel might well conclude that it would be in the debtor's best interest to seek such approval, whether or not it is required, in order to put parties in interest on notice as to the amounts the debtor intends to spend on living expenses each month, rather than wait until estate assets have been dissipated and another party in interest claims that the debtor's disbursements were unreasonable or excessive (and therefore constitute grounds to warrant the appointment of a chapter 11 trustee or conversion of the case) or did not qualify as ordinary course expenditures.

to conclude that Congress intended for post-petition wages in individual chapter 11 cases to receive treatment similar to post-petition wages in chapter 13 cases, as the post-petition wages of chapter 13 debtors had been included in the definition of property of the estate even before the adoption of BAPCPA.

■ In chapter 13 cases, debtors had never been required to obtain court permission before using post-petition wages to pay their ordinary post-petition living expenses. It is true that chapter 13 debtors encounter strict limitations on how much they may spend on their post-petition living expenses, but these limitations emanate from requirements that govern plan contents and plan confirmation, and not from any prohibition upon or limitation concerning the use of estate assets under section 363. Notwithstanding section 363(c)(1)'s reference to the ordinary course of a debtor's *business*, because the debtor cannot continue to generate post-petition wages without being able to pay for the personal expenses necessary to permit him to live his life and remain gainfully employed, section 363(c)(1) has generally been understood to authorize chapter 13 debtors to pay post-petition living expenses without notice and an opportunity for hearing or a prior court order, so long as such expenses are "ordinary course" rather than unusual or extraordinary. If a chapter 13 debtor's post-petition living expenses prove unreasonable or excessive, his chapter 13 case will be converted or dismissed, either because his plan was not proposed in good faith or because he is unwilling to devote all of his disposable income to the payment of creditors under his plan, and not because the debtor failed to obtain prior court approval for the payment of his ordinary course living expenses during the pendency of the case.

■ Rather than struggle to invent out of whole cloth a procedure and standard for approving requests by chapter 11 debtors for authority to spend property of the estate for the payment of post-petition living expenses,[6] the court should give section 363(c)(1) the same interpretation in chapter 11 cases as it has always been understood to have in chapter 13 cases. That is, the court should recognize that section 363(c)(1) authorizes a debtor in possession to use property of the estate to pay post-petition living expenses without prior court approval, so long as the amounts to be disbursed qualify as "ordinary course" expenses. An individual chapter 11 debtor needs to pay his living expenses in order to continue generating revenues for the estate. Thus, the payment of ordinary course living expenses should be treated as being within the debtor's ordinary course of business for the purpose of interpreting section 363(c)(1).[7]

The reasoning of *In re Goldstein*, 383 B.R. 496 (Bankr.C.D.Cal.2007), supports this conclusion. In *Goldstein*, the bankruptcy court was called upon to consider the debtors' request to employ a divorce attorney at the expense of the estate.

---

**6.** *See generally In re Villalobos*, BAP Nos. NV–11–1061–HKwJu, NV–11–1082–KHwJu, 2011 WL 4485793, 2011 Bankr.LEXIS 4329 (9th Cir. BAP August 19, 2011) (noting the uncertainty in the law as to what standard a bankruptcy court should apply to assess whether to approve a debtor's budget and remanding for the court to articulate the legal rule being applied and the findings of fact that support whatever rule the court elects to apply) for an example of the challenges that such an approach presents.

**7.** Whether or not a given expense is an ordinary course expense is a question of fact that may require consideration of both a vertical and a horizontal test of ordinariness. *See In re Dant & Russell, Inc.*, 853 F.2d 700 (9th Cir.1988).

Noting that section 1115(a) makes a chapter 11 debtor's post-petition wages property of the estate, leaving the debtor without the ability to pay a divorce attorney from non-estate assets, the court in *Goldstein* began its analysis with the premise that section 363(c) permits a debtor to use post-petition wages to pay his ordinary course living expenses: "This provision [section 363(c)(1)] authorizes a debtor to buy bread and probably to purchase a ticket to travel to a court hearing. However, the hiring of divorce counsel is not typically a transaction in the ordinary course of business." *Id.* at 499. Therefore, the debtors could only use property of the estate to employ divorce counsel after notice and a hearing under section 363(b). Had the debtors merely been requesting authority to pay undisputedly ordinary living expenses, the clear view of the bankruptcy judge in *Goldstein* is that bankruptcy court approval would not have been required.

## III

## CONCLUSION

As the Trustee has waived the right to argue that any of the Debtors' post-petition disbursements were for non-ordinary course expenses, *see, supra* at n. 2, the Trustee has not established that the Debtors engaged in any wrongdoing when they expended the Prepetition Cash and the Postpetition Cash to pay their post-petition living expenses. Therefore, the Court cannot find circumstances that warrant the imposition of a surcharge on the Exempt Funds to enable the estate to recoup these expenditures. Thus, the Surcharge Motion must be denied in its entirety.

Further, as no party in interest has articulated any other basis for objection to

the Debtors' claim of exemption with regard to the Settlement Proceeds,[8] Debtors are entitled to an order authorizing and directing their former counsel, Thomas E. Kent, to release from his trust account and pay the Debtors the Net Exempt Funds. Orders on both the Surcharge Motion and the Release Motion consistent with this memorandum are being entered concurrently herewith.

**IT IS SO ORDERED.**

---

**8.** Moreover, one of the provision of the HOA Settlement expressly provided for the recognition of an exemption in the balance of the Settlement Proceeds remaining after payment of $125,000 to the HOA.