**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 8, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

IN RE: TOBY SCRIVNER and
ANGELIQUE PISANO,

Debtors.

_____

TOBY SCRIVNER and ANGELIQUE
PISANO,

Appellants,

v.

JOHN D. MASHBURN, Trustee,

Appellee.

No. 07-6167

**APPEAL FROM UNITED STATES BANKRUPTCY APPELLATE**
**PANEL OF THE TENTH CIRCUIT**
**(BAP No. WO-06-122)**

Submitted on the briefs:[*]

Sam George Caporal and Mark W. Hayes, Oklahoma City, Oklahoma, for the
Appellants.

---

[*]After receiving briefing in this case, this three-judge panel granted the
Appellant's unopposed motion to waive oral argument. The case is therefore
submitted for disposition on the briefs. See Fed. R. App. P. 34(f); 10th Cir. R.
34.1(A)(2), (G).

John Mashburn, Trustee, Garvin, Agee, Carlton & Mashburn, P.C., Edmond, Oklahoma, for the Appellee.

Before **TACHA**, **BRISCOE**, and **HARTZ**, Circuit Judges.

**TACHA**, Circuit Judge.

Toby Scrivner and Angelique Pisano (the "debtors") appeal from the judgment of the Bankruptcy Appellate Panel ("BAP") affirming the bankruptcy court's authorization of a surcharge of their exempt property. Exercising jurisdiction pursuant to 28 U.S.C. § 158(d)(1), we REVERSE the BAP's judgment and the bankruptcy court's order authorizing the surcharge of the debtors' exempt assets.

## I. BACKGROUND

On October 14, 2005, the debtors filed a Chapter 7 petition for bankruptcy. In their schedule of assets, the debtors disclosed a 0.5% ownership interest in a television show called "Cheaters." They also reported that this interest produces "a monthly income ranging from $700 to $1,700," and they did not claim this income as exempt in their schedule of assets. In addition, the debtors did not surrender the monthly income from their interest in Cheaters to the trustee.

In March 2006, the bankruptcy court granted the debtors a discharge. After the debtors received the discharge, the trustee filed a motion to compel the turnover of the Cheaters distributions. The bankruptcy court granted the motion

in an order requiring the debtors to turn over the post-petition income generated by their interest in Cheaters. The debtors did not appeal the order, and they did not surrender any of the post-petition Cheaters income.

Beginning in June 2006, after delivering a copy of the court's turnover order to the Cheaters's producers, the trustee began receiving the debtors' distributions from their interest in Cheaters directly from the producers. In order to recover post-petition distributions prior to June 2006, the trustee filed a motion for an order of contempt and to surcharge the debtors' exemptions in the amount of $17,424.75 plus interest, costs, and attorneys' fees. In response, the debtors argued that, because the court had already granted them a discharge, the trustee could not ask the court to compel the turnover of estate property. In addition, they argued that their exemptions are protected from surcharge by state and federal law. They also argued—for the first time—that the Cheaters distributions are exempt property under Oklahoma law and therefore not estate property subject to turnover. They did not, however, file an amendment to their schedule of assets to claim the Cheaters distributions as exempt.

On October 24, 2006, the bankruptcy court issued an order granting the trustee's motion to surcharge the debtors' exemptions. The court ordered the debtors to turn over to the trustee $17,424.75 plus interest and $1300 in attorneys' fees by November 6, 2006. In the event the debtors failed to surrender the funds, the court order gave the trustee the authority to surcharge the debtors'

exemptions, including the debtors' retirement funds, to the extent necessary to satisfy the entire amount owed to the trustee. The court further held that the debtors are responsible for any taxes, penalties, or fees incurred in withdrawing or borrowing money from their retirement accounts.

The debtors appealed the bankruptcy court's order to the BAP, which affirmed—by a vote of two to one—the bankruptcy court's decision to authorize the surcharge of the debtors' exemptions. In addition, all three judges rejected the debtors' argument that the bankruptcy court erred in ordering the turnover of the Cheaters income because it is exempt under state law. Although one judge simply noted that this property is not exempt, the BAP majority refused to consider the debtors' exemption argument, holding that the bankruptcy court's implicit determination that the Cheaters income is estate property became the law of the case when the debtors did not appeal the turnover order. The debtors appeal the BAP's judgment affirming the bankruptcy court's authorization of the surcharge,[1] as well as the BAP's refusal to decide whether the Cheaters distributions are exempt.

## II. DISCUSSION

Although this is an appeal from a BAP decision, we independently review

---

[1]The trustee contends that the debtors did not challenge below the bankruptcy court's equitable authority to surcharge exempt assets. But the bankruptcy court and the BAP have both considered the matter, it has been briefed by the opposing parties in this court, and it is one of great importance to bankruptcy law. We therefore deem it appropriate for us to address it.

-4-

the decision of the bankruptcy court. *See In re Warren*, 512 F.3d 1241, 1248 (10th Cir. 2008) (explaining that by independently reviewing the bankruptcy court's decision, "we treat the BAP as a subordinate appellate tribunal whose rulings are not entitled to any deference (although they certainly may be persuasive)"). We review questions of law de novo and the bankruptcy court's factual findings for clear error. *Id.*

A.      The Bankruptcy Court's Authorization of the Surcharge of Exempt Assets

The bankruptcy court authorized the surcharge against the debtors' exempt assets pursuant to its equitable powers. A bankruptcy court's equitable powers are codified in 11 U.S.C. § 105(a). *See In re Alderete*, 412 F.3d 1200, 1206 (10th Cir. 2005) ("Section 105(a) of the Bankruptcy Code establishes the equitable powers of the bankruptcy court."). This section provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

§ 105(a). We have held, for example, that this provision grants bankruptcy courts the power to "sanction conduct abusive of the judicial process," *see In re Courtesy Inns, Ltd.*, 40 F.3d 1084, 1089 (10th Cir. 1994), and to correct their own mistakes, *see In re Themy*, 6 F.3d 688, 689–90 (10th Cir. 1993). Moreover, § 105(a) grants bankruptcy courts the power to enjoin particular actions that will

interfere with a debtor's bankruptcy case. *See In re Western Real Estate Fund, Inc.*, 922 F.2d 592, 601 (10th Cir. 1990) (per curiam) (noting that "a temporary stay prohibiting a creditor's suit against a nondebtor . . . may be permissible").

We have repeatedly emphasized, however, that a bankruptcy court may not exercise its "broad equitable powers" under § 105(a) "'in a manner that is inconsistent with the other, more specific provisions of the [Bankruptcy] Code.'" *In re Frieouf*, 938 F.2d 1099, 1103 n.4 (10th Cir. 1991) (quoting *In re Western Real Estate Fund, Inc.*, 922 F.2d at 601). In other words, a bankruptcy court's exercise of its authority under § 105(a) may not contravene or disregard the plain language of a statute. *See, e.g.*, *In re Alderete*, 412 F.3d at 1207 (holding that the bankruptcy court lacked the power under § 105(a) to grant the partial discharge of student loan debt when the debtor did not show undue hardship as required by statute); *In re Tuttle*, 291 F.3d 1238, 1245 (10th Cir. 2002) (noting that even though the debtor's "equitable arguments [under § 105(a)] are compelling, they cannot overcome the plain language of the Code"). As we have previously noted, "[t]o allow the bankruptcy court, through principles of equity, to grant any more or less than what the clear language of [a statute] mandates would be tantamount to judicial legislation and is something that should be left to Congress, not the courts." *In re Alderete*, 412 F.3d at 1207 (quotation omitted).

In the present case, we must therefore decide whether the bankruptcy court's authorization of the surcharge of exempt assets is consistent with other

provisions of the Bankruptcy Code. This is a question of first impression for our court, and only one other circuit has decided whether a bankruptcy court may use its equitable powers to surcharge a debtor's exempt assets when the debtor fails to turn over estate property. In *Latman v. Burdette*, 366 F.3d 774 (9th Cir. 2004), the Ninth Circuit held that the surcharge of a debtor's exempt assets may be an appropriate remedy "when reasonably necessary both to protect the integrity of the bankruptcy process and to ensure that a debtor exempts an amount no greater than what is permitted by the exemption scheme of the Bankruptcy Code." *Id.* at 786. As the *Latman* court noted, *id.* at 785–86, a number of bankruptcy courts have reached the same conclusion. *See, e.g.*, *In re Mazon*, 368 B.R. 906, 910 (Bankr. M.D. Fla. 2007) (noting that the remedy of surcharge "prevent[s] what would otherwise be a fraud on the court and on creditors caused by the debtor's failure to schedule and turn over estate assets"); *In re Karl*, 313 B.R. 827, 831 (Bankr. W.D. Mo. 2004) (explaining that the surcharge remedy preserves "the spirit of the Bankruptcy Code and the creditors' reasonable expectations in the event of liquidation").

As these cases illustrate, when the debtor conceals or fails to surrender assets belonging to the estate, the arguments supporting a surcharge of exempt assets are compelling. Here, the debtors failed to follow a court order requiring the surrender of their post-petition Cheaters distributions. Allowing the debtors to keep the full value of their exempt assets, when they have kept or converted

assets belonging to the estate, arguably gives the debtors an undeserved benefit at the expense of the estate and the creditors.[2]

But although we recognize this concern, we are not at liberty "to grant any more or less than what the clear language of [the Bankruptcy Code] mandates." *In re Alderete*, 412 F.3d at 1207 (quotation omitted). The Code contains specific provisions governing exemptions. *See* 11 U.S.C. § 522. Generally, if the debtor claims property as exempt and "a party in interest" does not object, that property is exempt from property of the estate. *See* § 522(*l*); *see also* Fed. R. Bankr. P. 4003. Furthermore, the Code contains a limited number of exceptions to the rule that exempted property cannot be used to satisfy pre-petition debts or administrative expenses. *See* § 522(c), (k). These enumerated exceptions do not include a surcharge of exempt property for failure to turn over estate property. Because the Code contains explicit exceptions to the general rule placing exempt property beyond the reach of the estate, we may not read additional exceptions into the statute. *See TRW, Inc. v. Andrews*, 534 U.S. 19, 28 (2001) ("Where

---

[2]Citing Fed. R. Bankr. P. 4004, the debtors argue that the trustee may not seek the turnover of estate property after a debtor is granted a discharge. This argument is without merit. Rule 4004 specifies when complaints objecting to discharge may be filed and when the court may grant a discharge; it does not limit the trustee's ability to administer the estate after discharge or otherwise modify a trustee's duty to collect estate property in a Chapter 7 bankruptcy. *See* 11 U.S.C. § 704(a)(1) (requiring trustee to "collect and reduce to money the property of the estate"); *see also id.* § 542(a) (requiring turnover of estate property to trustee); *id.* § 554(d) (stating that property that is not abandoned or administered remains estate property).

Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." (quotation omitted)); *see also In re Sadkin*, 36 F.3d 473, 478 (5th Cir. 1994) ("Section 105(a) does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code." (quotation omitted)).

The Code also contains specific remedies for a debtor's failure to turn over estate property to the trustee as required by 11 U.S.C. § 521(a)(4). For example, if the debtor destroys or conceals estate property with the intent to hinder or defraud a creditor or officer of the estate, the debtor may be denied a discharge. *Id.* § 727(a)(2). The court may also deny a discharge if the debtor has refused to obey a lawful court order. *Id.* § 727(a)(6). Similarly, other provisions addressing debtor misconduct contemplate specific remedial action on the part of the trustee and court. For example, § 707 authorizes the dismissal of a Chapter 7 case for cause, including "unreasonable delay by the debtor that is prejudicial to creditors." *Id.* § 707(a)(1).

Most salient for purposes of this case, the trustee may request that the court revoke a discharge if the debtor has refused to obey a court order. *Id.* § 727(d)(3). In a Chapter 7 case, the debtor is often able to obtain a discharge early in the case. *See* Fed. R. Bankr. P. 4004(a), (c) (requiring court to grant a discharge sixty days after the first date set for the meeting of creditors if certain

conditions are satisfied). The provisions governing revocation of a discharge allow the debtor to receive an early discharge while protecting the estate and creditors from debtor misconduct post-discharge. *See* 6 Collier on Bankruptcy ¶ 727.15[5] (15th ed. rev.). The trustee in this case is apparently pursuing this very remedy, having commenced an adversary proceeding in the bankruptcy court to revoke the debtors' discharge.[3]

In short, because the surcharge of exempt property is inconsistent with the Code's provisions governing exemptions and debtor misconduct, it is beyond the scope of a bankruptcy court's equitable authority under § 105(a). Section 105(a) does not empower courts to create remedies and rights in derogation of the Bankruptcy Code and Rules. *See In re Alderete*, 412 F.3d at 1207; *see also United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986) (explaining that § 105(a) "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity" (footnote omitted)). We therefore hold that the

---

[3]In addition to revoking the debtors' discharge, the court can impose sanctions for civil contempt. *See In re Skinner*, 917 F.2d 444, 447 (10th Cir. 1990) (holding that § 105 authorizes bankruptcy courts to impose sanctions for civil contempt to compel compliance with a court order or compensate parties for losses caused by noncompliance). In this case, the trustee filed a motion for an order of contempt, which the court did not address. We note, however, that by filing the motion, the trustee did not follow the proper procedure of commencing an adversary proceeding. Both a proceeding to revoke a discharge and a proceeding to obtain equitable relief (i.e., sanctions) are adversary proceedings. *See* Fed. R. Bankr. P. 7001(4), (7).

bankruptcy court exceeded its equitable authority under § 105(a) in authorizing the surcharge of the debtors' exempt assets.

B.    The Debtors' Argument that the Cheaters Income Is Exempt

The debtors also argue that they have no duty to turn over the post-petition Cheaters distributions because they are exempt under state law. They first raised this argument in response to the trustee's motion for an order of contempt and to surcharge the debtors' exemptions, but the bankruptcy court did not address it. The debtors raised it again in their appeal to the BAP, but the BAP majority held that it could not consider the argument because the bankruptcy court's implicit determination that the distributions are estate property became the law of the case when the debtors did not appeal the earlier turnover order.

The doctrine of the law of the case "posits that '[w]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *See Mason v. Texaco, Inc.*, 948 F.2d 1546, 1553 (10th Cir. 1991) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). In addition, the doctrine "requires every court to follow the decisions of courts that are higher in the judicial hierarchy." *Guidry v. Sheet Metal Workers Int'l Assoc.*, 10 F.3d 700, 705 (10th Cir. 1993), *aff'd in part and rev'd in part*, *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 39 F.3d 1078 (10th Cir. 1994) (en banc). Because the bankruptcy court did not depart from one of its own rulings or the ruling of a higher court in the same case, the doctrine of the law of the case

-11-

arguably does not apply here. *Cf. Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1224–25 (10th Cir. 2007) (holding that district court did not abuse its discretion in reconsidering a prior interlocutory ruling).

The BAP concluded, however, that the bankruptcy court implicitly decided that the Cheaters distributions are not exempt in its earlier turnover order, and this decision became the law of the case when the debtors did not appeal the order. *See Concrete Works of Col., Inc. v. City & County of Denver*, 321 F.3d 950, 992 (10th Cir. 2003) (noting that a "legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time" (quotation omitted)). But the law of the case should not constrain appellate review of a lower court's decision unless a party fails to challenge that decision in an *actual* appeal. *See id.* at 992–93; *see also Capps v. Sullivan*, 13 F.3d 350, 353 (10th Cir. 1993) (declining to review an issue because the parties did not contest it in their prior appeal); *Laffey v. Nw. Airlines, Inc.*, 740 F.2d 1071, 1090 (D.C. Cir. 1984) (explaining that when a party fails to challenge a decision in its first appeal, that appeal affirms the lower court's decision for purposes of the law of the case). If no appeal is taken, as was the case here, the apposite doctrine is that of issue preclusion. *See generally* Charles Alan Wright et al., 18A Federal Practice and Procedure § 4433 (2d ed. 2002); *see also id.* 18B

Federal Practice and Procedure § 4478.6, at 819 ("If no one appeals on any issue, the judgment of the trial court moves into the realm of res judicata.").

The doctrine of issue preclusion "comes into play when an issue involved in a prior decision is the same issue involved in a subsequent action." *See Mabry v. State Bd. of Community Colleges & Occupational Educ.*, 813 F.2d 311, 316 (10th Cir. 1987). If the bankruptcy court's turnover order, which the debtors did not appeal, "actually and necessarily decided" the exemption issue, principles of issue preclusion could prevent the debtors from raising this argument in an appeal from a subsequent order. *See id.* (noting that issue preclusion does not apply unless "the issue is actually decided in the first action" and "it was necessary to decide the issue in disposing of the first action"); *see also In re Albrecht*, 233 F.3d 1258, 1260–61 (10th Cir. 2000) (holding that, under the doctrine of direct estoppel, a law firm's failure to appeal the bankruptcy court's earlier order barred it from challenging the court's holding on its appeal from a subsequent order); *Turshen v. Chapman*, 823 F.2d 836, 839 (4th Cir. 1987) (holding that a debtor could not relitigate the claim that the trustee breached his fiduciary duty because the bankruptcy court had already held that the trustee's actions were not improper).

We recognize, however, that the BAP's application of the law-of-the-case doctrine has some support in our case law. On at least one occasion, we have applied the law-of-the-case doctrine, rather than issue preclusion, to prevent a

-13-

party from raising an issue when the party failed to appeal an earlier order deciding the issue. *See Martinez v. Roscoe*, 100 F.3d 121, 123 (10th Cir. 1996). We need not determine, however, whether this decision is in conflict with our other precedent because the debtors have not taken the necessary steps to claim this exemption.

Under the Code, it is the debtor's responsibility to claim all exemptions. *See* § 522(*l*); Fed. R. Bankr. P. 4003(a). Unless a debtor claims an exemption, the property remains property of the estate. *See In re Yonikus*, 974 F.2d 901, 905 (7th Cir. 1992) ("All property the debtor owns at the time the bankruptcy petition is filed becomes property of the bankruptcy estate. Rather than withholding property from the estate, the debtor actually seeks a return of the property from the estate by filing the claim for exemption." (citation omitted)). In order to claim an exemption, the debtors must list the exempt property in their schedule of assets. *See* § 522(*l*); Fed. R. Bankr. P. 4003. They did not, however, claim the Cheaters distributions as exempt property in their schedule of assets, and they have not filed an amendment to claim the exemption. *See* Fed. R. Bankr. P. 1009(a).

Because the debtors did not claim an exemption, the bankruptcy court did not consider the question of whether the distributions are exempt under state law when it resolved the trustee's turnover motion. Thus, we disagree with the BAP's conclusion that the bankruptcy court implicitly determined that the distributions

are estate property.  Rather, the bankruptcy court treated the funds as estate property because the debtors had not properly claimed an exemption.

## III.  CONCLUSION

Accordingly, we REVERSE the BAP's judgment and the bankruptcy court's order authorizing the surcharge of the debtors' exempt assets.  We also DENY the trustee's request for attorneys' fees and costs on appeal.