**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 24, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

In re:

DOUGLAS JAMES REINHART,

    Debtor.

———————————————

DAVID L. GLADWELL, Trustee,

    Appellant,

v.

DOUGLAS JAMES REINHART,

    Appellee.

No. 09-4028
(D.C. No. 2:08-CV-00562-DAK)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **HOLLOWAY**, and **MURPHY**, Circuit Judges.[**]

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] The Honorable Deanell R. Tacha was originally a member of this panel and participated in the panel's per curiam decision to certify a question of state law to the Utah Supreme Court. Judge Tacha resigned her commission while we awaited resolution of the certified question. After the certified question was resolved by the Utah Supreme Court, the Honorable Michael R. Murphy took Judge Tacha's place on the panel.

Dr. Douglas Reinhart started a Keogh retirement plan in 1992. His plan was created using documents designed by professionals to comply with the tax code and IRS procedural requirements. Even though the plan was initially set up to conform to applicable law, ultimately Dr. Reinhart failed to operate it in accordance with its terms. Consequently, the plan fell out of compliance with the tax law. For example, Dr. Reinhart failed to include his wife, who was his employee, as a participant in the Keogh plan. Because the plan's formation documents required him to make all employees participants, this defect, among others, disqualified the Keogh plan from eligibility for favorable tax treatment.

Almost a decade after establishing the retirement plan, Dr. Reinhart filed for bankruptcy. Dr. Reinhart sought to exempt funds in his Keogh plan from inclusion in the bankruptcy estate, arguing that Utah law provides for exemption of funds in a Keogh plan even if the plan suffers from operational defects that disqualify it from beneficial tax treatment. The Utah Supreme Court, in response to our request, advised us that Utah law allows exemption of retirement plan funds as long as the plan substantially complies with the IRS's tax requirements. Considering Dr. Reinhart's Keogh plan against that compliance standard, we conclude that he is entitled to exempt the plan's funds from the estate.

One additional wrinkle: Dr. Reinhart contributed $20,400 to the Keogh plan within one year of filing for bankruptcy. Even though the funds in his retirement plan are generally exempt from the bankruptcy estate, Utah law does not accept exemption of preferential contributions of this sort. So Dr. Reinhart was ordered by the bankruptcy court to turn $20,400 over to the trustee of his estate. The problem is that he was not ordered to turn over earnings produced by those funds. Allowing Dr. Reinhart to keep earnings produced by this nonexempt property violates the Bankruptcy Code. Accordingly, we remand the case back to the bankruptcy court.

* * *

Appellant David Gladwell, acting as trustee for Debtor-Appellee Dr. Douglas Reinhart's bankruptcy estate, appeals the district court's affirmance of the bankruptcy court's ruling, which exempted from the estate most of the funds held in a Keogh retirement plan established by Dr. Reinhart. On appeal, Mr. Gladwell raises two issues. First, he argues that controlling Utah property law dictates that the retirement plan's funds do not qualify for *any* exemption from the bankruptcy estate. Second, even if the plan's funds are generally exempt under Utah law, he asserts that federal bankruptcy law does not allow earnings produced by nonexempt contributions to be equitably exempted from the estate. We certified a question of state law to the Utah Supreme Court to aid in our resolution of the first issue, and have received further guidance from that court. Applying Utah law, we **AFFIRM** the bankruptcy court's decision to uphold Dr.

3

Reinhart's claimed exemption for funds in his Keogh retirement plan. However, applying federal bankruptcy law, we **REVERSE** the bankruptcy court's turnover order, which failed to include earnings produced by $20,400 in preferential contributions to the retirement plan, and we **REMAND** the case back to the bankruptcy court for modification of that order in accordance with this decision.

## I. BACKGROUND

### A. Factual Background

Dr. Reinhart, an anesthesiologist, practiced medicine in Ogden, Utah. In December 1992, he set up a retirement plan with Charles Schwab & Co ("Schwab"), which throughout this litigation has been characterized as a "Keogh plan" established pursuant to § 401(a) of the Internal Revenue Code ("IRC"). The Internal Revenue Service ("IRS") describes Keogh plans and some of their technical requirements in a publication titled "Retirement Plans for Small Businesses":

> These qualified retirement plans set up by self-employed individuals are sometimes called Keogh or H.R.10 plans. A sole proprietor or a partnership can set up one of these plans. A common-law employee or a partner cannot set up one of these plans. The plans described here can also be set up and maintained by employers that are corporations. All the rules discussed here apply to corporations except where specifically limited to the self-employed.
>
> The plan must be for the exclusive benefit of employees or their beneficiaries. These qualified plans can include coverage for a self-employed individual.

4

As an employer, you can usually deduct, subject to limits, contributions you make to a qualified plan, including those made for your own retirement. The contributions (and earnings and gains on them) are generally tax free until distributed by the plan.

* * *

*Profit-sharing plan.* Although it is called a "profit-sharing plan," you do not actually have to make a business profit for the year in order to make a contribution (except for yourself if you are self-employed as discussed under "Self-employed Individual" later). A profit-sharing plan can be set up to allow for discretionary employer contributions, meaning the amount contributed each year to the plan is not fixed. An employer may even make no contribution to the plan for a given year.

The plan must provide a definite formula for allocating the contribution among the participants and for distributing the accumulated funds to the employees after they reach a certain age, after a fixed number of years, or upon certain other occurrences.

* * *

*Money purchase pension plan.* Contributions to a money purchase pension plan are fixed and are not based on your business profits. For example, if the plan requires that contributions be 10% of the participants' compensation without regard to whether you have profits (or the self-employed person has earned income), the plan is a money purchase pension plan. This applies even though the compensation of a self-employed individual as a participant is based on earned income derived from business profits.

IRS, Publication 560, at 12 (Feb. 7, 2012) (available at http://www.irs.gov/pub/irs-pdf/p560.pdf) (last visited Apr. 19, 2012).[1]

Dr. Reinhart's plan was a "combination plan" which incorporated both a profit-sharing plan and a money purchase pension plan. In general, Dr. Reinhart funded his Keogh plan by depositing money into the Schwab account, more or less in the same way as one might fund an ordinary checking account by depositing checks. The ease with which Dr. Reinhart funded his Keogh plan, however, belied the complexity of the tax rules governing it. This proved troublesome, as Dr. Reinhart ultimately failed to operate his plan within the statutory requirements of IRC § 401(a), rendering the plan disqualified from beneficial tax treatment. The plan's specific operational defects are discussed in greater detail in Part I.B, *infra*.

**B. Bankruptcy Proceedings**

Dr. Reinhart eventually ran into financial troubles due to investments unrelated to his medical practice, and filed for bankruptcy under Chapter 7 of the Bankruptcy Code on January 28, 2000 ("petition date"). Pursuant to the Bankruptcy Code, Dr. Reinhart filed required schedules with his bankruptcy petition. Schedule C listed funds which Dr. Reinhart claimed were exempt from claims of creditors. Dr. Reinhart amended his

---

[1] Although administrative guidance contained in an IRS publication is not binding on the government, it nevertheless affords helpful background information about Keogh plans, which are formally referred to as "qualified plans" by the IRS.

Schedule C twice, ultimately claiming a $333,835.65 exemption for funds in his Keogh retirement plan. Mr. Gladwell was appointed as the trustee of Dr. Reinhart's bankruptcy estate, and objected to the claimed exemption for funds held in the Schwab Keogh plan.[2] Mr. Gladwell stated two grounds for his objection: (1) the Keogh plan was not tax-qualified under § 401(a) of the IRC, and thus the funds in it were not eligible for exemption under the Bankruptcy Code and Utah law; and (2) even if the plan's funds were generally exempt, amounts contributed to the plan by Dr. Reinhart within one year of the petition date were nonexempt under Utah law.

The bankruptcy court presiding over Dr. Reinhart's bankruptcy case held a bench trial to resolve Mr. Gladwell's objections. At trial, expert testimony was elicited from W. Waldan Lloyd, a lawyer who specializes in federal retirement and tax law. Mr. Lloyd testified that the Keogh plan was defective, and thus disqualified from receiving special tax treatment under § 401(a) of the IRC. Specifically, Mr. Lloyd opined that the plan had the following tax defects as of the petition date:

(1) Dr. Reinhart's wife was employed by Dr. Reinhart himself and later by the professional corporation ("PC") that Dr. Reinhart established and owned, but she

_____

[2] Dr. Reinhart also claimed an exemption for funds held in a "403(b)(7) plan." Although Mr. Gladwell initially objected to this exemption, that objection was later withdrawn. The claimed exemption for funds in Dr. Reinhart's Keogh plan is the only subject of dispute in this litigation.

7

was never made a participant in the plan as required by the plan's formation documents and IRC;

(2) Dr. Reinhart failed to contribute to the "money pension purchase" portion of his plan from 1996 through 2000, even though the plan's formation documents required 10% contributions to the money purchase pension plan;

(3) Dr. Reinhart caused the plan to make a loan to a third party without first putting money for the loan into the Schwab account;

(4) Dr. Reinhart made a contribution that exceeded statutory limits by some $1,456 in 2000; and

(5) When he switched his business model from a sole proprietorship to a PC, the PC did not become the administrator of the Keogh plan, and Dr. Reinhart continued making contributions to the plan in his individual capacity while employed by the PC.

Mr. Lloyd further testified, however, that all of these defects fell within the parameters of the IRS's system for correcting retirement plan defects, known as EPCRS.[3]

---

[3] "EPCRS" stands for Employee Plan Compliance Resolution System. It allows a plan operator to retain beneficial tax treatment of a retirement plan even though the plan has suffered from operational defects that cause it to fall out of compliance with the IRC. Without EPCRS, all the beneficiaries (*e.g.* ordinary employees of a company who have nothing to do with retirement plan management) of any plan that fell out of compliance — even if in a de minimis fashion — would suffer potentially severe adverse tax

(continued…)

8

Even though some of the defects of the Keogh plan involved factual issues contested at trial, these disqualifying characteristics are not contested on appeal. In other words, on appeal Dr. Reinhart concedes that as of the petition date, each of these defects disqualified the Keogh plan from receiving beneficial tax treatment under 26 U.S.C. § 401(a).[4]

After trial, the bankruptcy judge orally entered his factual findings and legal conclusions into the record. The judge explicitly deemed credible Mr. Lloyd's expert testimony. Relying on that expert testimony, the judge concluded that Dr. Reinhart's Keogh plan was "operationally in default" when the bankruptcy petition was filed, but was nevertheless covered by Utah's exemption statute because "the debtor need not present strict compliance with the Internal Revenue Code" for funds in a Keogh plan to achieve exempt status. Aplt. App'x at 51-52. Accordingly, Mr. Gladwell's objection to exemption of all the funds in the Keogh plan was overruled.

---

(…continued)

consequences if the plan was challenged by the IRS. EPCRS is fully described in and administered pursuant to IRS Rev. Proc. 2008-50.

[4] Our initial certification order, submitting a legal question to the Utah Supreme Court, describes in greater detail the facts underlying these tax defects. *See Gladwell v. Reinhart (In re Reinhart)*, 362 F. App'x 919, 921-22 (10th Cir. 2010) (per curiam) (unpublished).

9

As to alleged preferential contributions to the Keogh plan,[5] the bankruptcy judge

concluded that Dr. Reinhart had contributed $20,400 to the Keogh plan within one year

of filing his bankruptcy petition. These funds were deemed nonexempt under Utah Code

Ann. § 78B-5-505(1)(b)(ii) (2008)[6] and ordered turned over to the Trustee. Aplt. App'x

at 28; 31-32. The bankruptcy judge did not address the turnover of any earnings

produced by those preferential contributions. Mr. Gladwell never objected to the form of

the turnover order entered by the bankruptcy court, but his formal objection to the

claimed exemption for funds in the Keogh plan had argued that "benefits accrued . . . on

behalf of the Debtor" within one year of the petition date. Aplt. App'x at 13.

### C. Appellate Proceedings

---

[5] We recognize that a "preference" is a term with particular legal significance under the Bankruptcy Code. *See* 11 U.S.C. § 547. Utah's exemption statute contains an analogous provision, proscribing retirement plan contributions from exemption if they are made within one year of filing for bankruptcy. *See* Utah Code Ann. § 78B-5-505(1)(b)(ii). We refer to the $20,400 amount as "preferential contributions" as a matter of convenience, without invoking any legal significance given to the term "preference" by the Bankruptcy Code.

[6] Unsurprisingly, the Utah Code has undergone amendment since Dr. Reinhart's bankruptcy petition was filed twelve years ago. Amendments have resulted in renumbering of the statutory provisions relevant to this case. Because no substantive changes that bear on this case were made to any provisions of the Utah Code since the bankruptcy petition was filed, for convenience we refer to Utah statutes as they are presently codified.

10

Mr. Gladwell appealed to the district court. The district court affirmed the bankruptcy court, incorporating by reference the bankruptcy judge's findings and conclusions which had been entered into the record orally. Aplt. App'x at 373-74. As to earnings produced by the preferential contributions, the district court went beyond the bankruptcy court's explicit findings, and ruled that the bankruptcy court properly "exercised its equitable powers to the limit the turnover amount to the principal amount [of contributions]." *Id.* at 374. Mr. Gladwell timely appealed the district court's decision to this Court.

After oral argument on this matter, in January 2010 we entered an amended per curiam decision certifying a necessary and unresolved question of state law to the Utah Supreme Court. *Gladwell v. Reinhart (In re Reinhart)*, 362 F. App'x 919 (10th Cir. 2010) (per curiam) (unpublished). The Utah Supreme Court heard arguments from the parties in March 2011 and issued its decision in December 2011. *Gladwell v. Reinhart (In re Reinhart)*, 267 P.3d 895 (Utah 2011). Aided by the Utah Supreme Court's guidance as to matters of Utah law as well as supplemental briefing by the parties, we now resume our consideration of this case.

The district court properly exercised jurisdiction over this case pursuant to 11 U.S.C. § 158(a)(1), (c)(1)(A). We exercise jurisdiction over the district court's final decision pursuant to 28 U.S.C. § 1291 and 11 U.S.C. § 158(d)(1). "We review matters of law de novo," and defer to bankruptcy court's factual findings unless clearly erroneous,

11

remaining mindful that "the Bankruptcy Code must be construed liberally in favor of the debtor and strictly against the creditor." *Mathai v. Warren (In re Warren)*, 512 F.3d 1241, 1248 (10th Cir. 2008) (quotations omitted).

## II. EXEMPTION OF THE ENTIRE KEOGH PLAN

### A.  Background Bankruptcy Law

In order to provide context for the state property law that is disputed in this case, we first lay out the basic principles of federal bankruptcy law which underlie this dispute. As soon as a debtor files a petition for bankruptcy, the bankruptcy estate begins its legal existence.[7]  Some, but not all, of the debtor's property as of the time of filing is included in that estate.[8]  Retirement plans are a mixed bag — although their funds generally are not included in the estate, if the debtor and his spouse are the only participants in a retirement plan, then the plan's funds generally are included in the estate.[9]  The parties do

---

[7] *See* 11 U.S.C. § 541(a) ("The commencement of a [bankruptcy case] under section 301, 302, or 303 of [the Bankruptcy Code] creates an estate. . . .").

[8] *See* 11 U.S.C. § 541(a)(1) (including as property of the bankruptcy estate "all legal or equitable interests of the debtor in property as of the commencement of the case" but providing for a number of excludable items in later subsections of the same section).

[9] This distinction derives from 11 U.S.C. § 541(b)(7)(A)(i)(I), which excludes from the bankruptcy estate "any amount . . . withheld by an employer from the wages of employees for payment as contributions . . . to . . . an employee benefit plan that is subject to title I of [ERISA]."

(continued…)

12

not dispute that Dr. Reinhart was the only participant in his Keogh plan and that its funds were includable in the bankruptcy estate.[10]

Certain types of property that are nominally includable in the bankruptcy estate may be declared exempt by a debtor, thus avoiding them from claims of creditors in bankruptcy. *See* 11 U.S.C. § 522(b)(1). Exempt property is not part of the bankruptcy estate, even if the Bankruptcy Code otherwise provides for its inclusion. The practical

---

(…continued)

An ERISA "employee benefit plan" cannot exist without employees, and ERISA regulations exclude from the definition of "employee" the owner of a business and his spouse. *See* 29 CFR § 2510.3-3(c)(1) ("An individual and his or her spouse shall not be deemed to be employees with respect to a trade or business, whether incorporated or unincorporated, which is wholly owned by the individual or by the individual and his or her spouse . . . ."); *Id.* § 2510.3-3(b) ("For purposes of title I of [ERISA] and this chapter, the term "employee benefit plan" shall not include any plan, fund or program, other than an apprenticeship or other training program, under which no employees are participants covered under the plan. . . . For example, a so-called "Keogh" or "H.R. 10" plan under which only partners or only a sole proprietor are participants covered under the plan will not be covered under title I. However, a Keogh plan under which one or more common law employees, in addition to the self-employed individuals, are participants covered under the plan, will be covered under title I.").

[10] One of the deficiencies in Dr. Reinhart's plan is that he did not allow all of his employees to participate. And because Dr. Reinhart's argument for exemption relies on the correctable nature of his plan's defects, we might well need to at least hypothetically assume that all of his employees were participants in his plan. However, the only other employee of Dr. Reinhart's business was his wife. So even if we attribute to her participation in the plan — as would have been required to comply with relevant provisions of the IRC — the plan's funds would still be includible in the estate pursuant to 11 U.S.C. § 541(a), (b)(7)(A)(i)(I).

effect of an exemption is to allow a debtor to retain the exempted property and avoid having it used to repay creditors.

In bankruptcy cases brought by Utah domiciliaries, Utah law governs whether property can be exempted from the estate created by the Bankruptcy Code.[11] *See* 11 U.S.C. § 522(b)(3)(A). Utah law exempts from execution by creditors "any money or other assets held for or payable to the individual [debtor]" where the debtor is "a participant or beneficiary in a retirement plan or arrangement that is described in Section 401(a) . . . [of the] Internal Revenue Code."[12] Utah Code Ann. § 78B-5-505(1)(a)(xiv). If this statutory provision covers Dr. Reinhart's Keogh plan, then its funds are exempt. If not, the funds are part of the bankruptcy estate.

## B. Clarification from the Utah Supreme Court

---

[11] The Bankruptcy Code ordinarily allows a debtor to avail himself of an enumerated list of exemptions provided for in the Code itself. However, the Code also permits states to preclude debtors from using that list. *See* 11 U.S.C. § 522(b)(2). Utah has taken up Congress's offer to establish its own exemptions and disregard the Code's, and thus Dr. Reinhart could only exempt property as expressly provided under Utah law. *See* Utah Code Ann. § 78B-5-513 ("No individual may exempt from the property of the estate in any bankruptcy proceeding the property specified in [11 U.S.C. § 522(d)], except as expressly permitted under this part.").

[12] Utah's exemption statute exempts plans "described in" other IRC provisions, but we list only § 401(a) here for simplicity's sake. Dr. Reinhart does not argue that his Keogh plan might be "described in" any of the other listed provisions.

14

Having elucidated Utah property law's impact on this dispute, we are left with a simple enough question: Under Utah law, is Dr. Reinhart's Keogh plan "described in" § 401(a) of the Internal Revenue Code? Our initial deliberation led us to ask for the assistance of the Utah Supreme Court in interpreting Utah's exemption statute. Pursuant to Tenth Circuit Rule 27.1 and Utah Rule of Appellate Procedure 41, we certified a question of state law to the Utah Supreme Court, asking whether, under Utah law, a retirement plan is "described in" a provision of the IRC even if it does not comply with each of the technical requirements listed in the terms of that provision. *Gladwell v. Reinhart (In re Reinhart)*, 362 F. App'x 919, 920 (10th Cir. 2010) (per curiam) (unpublished).

The Utah Supreme Court told us that as long as a retirement plan "substantially complies" with § 401(a)'s requirements, it is covered by the Utah exemption statute. *Gladwell v. Reinhart (In re Reinhart)*, 267 P.3d 895, 899 (Utah 2011). The court explained that it need not decide "which provisions of section 401(a) are substantial and which ones are insignificant because the EPCRS has already made this determination," elaborating on its statement by noting that a plan in substantial compliance with § 401(a) "can be corrected." *Id.* at 899-900. Thus, a plain reading of the Utah Supreme Court's directive gives us an objective standard: A plan is in substantial compliance with § 401(a) if its defects fall within the scope of those that can be corrected with the IRS's EPCRS system.

15

## C. Application of Utah Law to Dr. Reinhart's Keogh Plan

Our resolution of this issue, then, comes down to one key question: Were the Keogh plan defects correctable through the EPCRS system? The Trustee's expert, Mr. Lloyd, indicated that they all were at least potentially correctable under EPCRS. And the bankruptcy court found Mr. Lloyd to be a credible witness. However, the bankruptcy judge himself never made an explicit finding that the operational defects in the Keogh plan could be corrected pursuant to EPCRS.

The judge's statement of his understanding of Mr. Lloyd's testimony on this point preceded his legal conclusion that the Keogh plan was eligible for exemption: "Mr. Lloyd further testified that the -- all of these operational failures were remedial [sic], however." Aplt. App'x at 47. We cannot make sense of the judge's statement. "Remedial" has no logical application to an operational failure or defect. Nothing in Mr. Lloyd's testimony indicates that anything about the plan's operational failures had to do with "providing a remedy" or "means of obtaining redress" for anything at all. Black's Law Dictionary 1407 (9th ed. 2009). We see two possibilities: (1) the bankruptcy judge meant to say "remediable" (*i.e.* "[c]apable of being remedied, esp[ecially] by law," Black's Law Dictionary 1407 (9th ed. 2009)) rather than "remedial"; or (2) the bankruptcy judge's statement was mistranscribed.

While we are inclined to conclude that the judge did or meant to say "remediable," we need not rely on that intuition, because the bankruptcy court's factual finding that Mr.

16

Lloyd was a credible witness allows us to conclude that each Keogh plan defect was correctable under EPCRS. *Cf. Medina v. City and County of Denver*, 960 F.2d 1493, 1495 n.1 (10th Cir. 1992) ("We are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court.") (alterations and quotations omitted). When asked if the defects in Dr. Reinhart's Keogh plan were correctable under EPCRS, Mr. Lloyd responded, "I don't believe that errors here are errors that would fall outside the parameters of the [EPCRS] program."[13] Aplt. App'x at 229. Therefore, under the

---

[13] Mr. Gladwell makes an additional argument in his supplemental brief that bears mentioning. He claims that Mr. Lloyd offered no testimony about one of the operational defects — specifically, the fact that Dr. Reinhart's employer (*i.e.* the PC) neither established nor maintained the Keogh plan as of the petition date. It follows, Mr. Gladwell argues, that Mr. Lloyd could not have opined on the correctability of that particular defect. Aplt. Supp. Br. at 9 ("As to the fifth [defect] (i.e. the failure of the Debtor's plan to be established and maintained by his employer on the petition date), Mr. Lloyd did not testify.").

This contention is belied by the record. Mr. Lloyd identified and described the five plan defects listed in Part I.B, *supra*, including the fact that the PC did not administer the Keogh plan. Aplt. App'x at 214 ("So what we have is this sort of unusual situation where the professional corporation is acting as the sponsor of a plan that it has not formally adopted. That's again, technically, another disqualifying event with respect to the plan.") (testimony of Mr. Lloyd). Shortly after describing in some detail each of the plan's defects, Mr. Lloyd opined that the "errors here" fell within the broad scope of EPCRS. Aplt. App'x at 229. Thus, we disagree that Mr. Lloyd did not testify about this defect, and reject Dr. Reinhart's argument which relies on that faulty premise.

17

standard set forth by the Utah Supreme Court, we hold that Dr. Reinhart's Keogh plan was "described in" IRC § 401(a).

To be sure, the record reflects that Dr. Reinhart never actually used — or even tried to use — the EPCRS system.[14] But the Utah Supreme Court has given us its interpretation of Utah law, and told us that a plan is exempt if it "can be corrected." *Reinhart*, 267 P.3d at 899-900. As of the date the bankruptcy petition was filed, Dr. Reinhart's plan suffered from deficiencies which could, at least theoretically, be corrected using EPCRS. While it might make good policy to require a debtor to actually make some effort to use the EPCRS system before allowing them to exempt their retirement plan from creditors, Utah has not seen fit to include that requirement as a prerequisite to exemption.[15]

We recognize that this inviting standard makes Utah citizens' retirement plans exempt from creditors with minimal (if any) regard to their actual compliance with IRS

---

[14] At oral argument before the Utah Supreme Court, Dr. Reinhart's counsel acknowledged Dr. Reinhart had made a strategic decision to avoid the EPCRS system in hopes of letting the clock run out on the period within which the IRS could institute an action challenging the tax qualification of the Keogh plan. *See* Aplt. Supp. App'x at 14.

[15] The Utah Supreme Court observed: "[T]he fact that a debtor's retirement plan fails to meet the requirements of section 401(a) at the time he files for bankruptcy does not necessarily mean that the debtor never intends to amend his plan to comply with those requirements." *Reinhart*, 267 P.3d at 900. Despite this observation, we see no indication in the court's opinion *requiring* any actual efforts to use EPCRS in order to satisfy the substantial compliance standard.

provisions. EPCRS is inherently a flexible system, and does not include a definitive list of correctable errors. Naturally, then, the scope of errors that *might* fall within its reach is quite vast. Thus, anyone who superficially labels a set of savings as a "retirement plan" will typically have a persuasive argument that they *could* correct that plan with EPCRS, therefore permitting exemption of those savings. But the standard of theoretical correctability is one that the Utah legislature has established, and one that only the Utah legislature can change.

If our intuition is correct, and Utah residents can use the exemption statute to shield almost anything they label (whether artificially or genuinely) a "retirement plan," creditors may hesitate to lend to Utah borrowers who might avoid repayment through this broad exemption statute.[16] However, such a policy concern is one for the Utah legislature to address, not a court — and most certainly not a federal court tasked with applying the rigors of Utah law. Applying Utah law, we hold that funds in Dr. Reinhart's Keogh plan were exempt from inclusion in the bankruptcy estate.

### III. EQUITABLE EXEMPTION OF EARNINGS

---

[16] It might be the case that under the Utah Supreme Court's ruling, a plan cannot substantially comply with IRC § 401(a) if it suffers from formation defects rather than operational defects. Such a limitation might temper concerns about potential abuse of Utah's exemption provision. Here, however, we do not wrangle with the outer bounds of substantial compliance, because the Keogh plan suffered from operational (as opposed to formation) defects which were correctable under EPCRS.

Turning to the second issue appealed, we consider whether earnings produced by $20,400 in preferential contributions should have been included in the turnover order. Mr. Gladwell tells us that the bankruptcy court erred in excluding these earnings because they were "[p]roceeds . . . or profits from property of the estate." *See* 11 U.S.C. § 541(a)(6).

Dr. Reinhart does not disagree that these earnings were nominally part of the estate. Aplee. Br. at 21-23. Instead, Dr. Reinhart defends their exclusion from the turnover order by asserting that the bankruptcy court acted pursuant to its equitable powers under § 105(a) of the Bankruptcy Code in leaving them out of the turnover order. Section 105(a) grants the bankruptcy court the power to "issue any order . . . or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."

The basis for this purported exercise of the bankruptcy court's equitable powers under § 105(a), Dr. Reinhart tells us, is that Mr. Gladwell failed to identify "specific theories and bases for objecting" to exemption of the Keogh plan until over six years after Dr. Reinhart filed his bankruptcy petition. Aplee. Br. at 22. In other words, Dr. Reinhart frames Mr. Gladwell's claim for turnover of the earnings as procedurally defaulted, and contends that a declination to include earnings produced by nonexempt contributions is a proper equitable sanction for that default.

The bankruptcy court never articulated the notion that it was permitted to exclude earnings on the $20,400 from the turnover order as an exercise of its equitable powers

under § 105(a).  Instead, the first time this theory was discussed and adopted was in the district court.  We disagree with the district court's justification, and conclude that the bankruptcy court should not have excluded earnings on the $20,400 from the turnover order.  Specifically, we hold that the bankruptcy court did not have the authority to withhold earnings on the preferential contributions as a sanction for an alleged procedural default.

Dr. Reinhart's argument suffers from a fatal flaw: The Bankruptcy Code's plain language definitively states that proceeds from property of the estate are themselves property of the estate.  Under § 541(a)(6), "[p]roceeds . . . from property of the estate" are property of the estate.  Dr. Reinhart does not dispute that earnings produced by property of the estate fall under this provision.  Aplee. Br. at 21-23; *see also Parkinson v. Bradford Trust Co. of Boston (In re O'Brien)*, 50 B.R. 67 (Bankr. E.D. Va. 1985) (including in the bankruptcy estate pre- and post-petition earnings on nonexempt prepetition contributions to a Keogh plan).  This is Dr. Reinhart's undoing, as "a bankruptcy court's exercise of its authority under § 105(a) may not contravene or disregard the plain language of a statute."  *Scrivner v. Mashburn (In re Scrivner)*, 535 F.3d 1258, 1263 (10th Cir. 2008)

Our holding in *Scrivner* is particularly instructive as to the limits on exercise of equitable authority under § 105(a).  There, we held that the bankruptcy court may not, acting under the guise of § 105(a), prevent a debtor from exempting property from the

21

bankruptcy estate when the Bankruptcy Code permits him to make the exemption.

*Scrivner*, 535 F.3d at 1264-65. It follows just as strongly that the bankruptcy court may

not, in the name of equity, exclude property from the estate when the plain terms of the

Code put that property in the estate in the first place and do not allow for its exemption.[17]

Excluding earnings produced by property of the estate (*viz.* $20,400 in preferential

contributions) does not carry out any provision of the Bankruptcy Code. Rather, the

exclusion contravenes the plain terms of § 541 of the Bankruptcy Code, which include

---

[17] Even if the bankruptcy court could impose a sanction that excluded funds which are patently property of the estate under the Bankruptcy Code, such a sanction is not warranted given the posture of this case. Dr. Reinhart has not shown that the six-year "delay" between Mr. Gladwell's initial objection and the trial date violated the Bankruptcy Code or accompanying procedural rules.

Fed. R. Bankr. Proc. 4003(b) provides, "[A] party in interest may file an objection to the list of property claimed as exempt . . . within 30 days after any amendment to the list or supplemental schedules is filed . . . ." Dr. Reinhart amended his Schedule C to include funds in his Keogh plan on May 16, 2000. Aplt. App'x at 16. Mr. Gladwell objected to the amended schedule on June 15, 2000, thirty days after the amendment was filed. *Id.* at 12-13. The objection complied with the relevant procedural rules, and there is no statute of limitations for turnover actions. *See In re Mushroom Transportation Co.*, 382 F.3d 325, 336-37 (3rd Cir. 2004) ("The Bankruptcy Code does not impose a statute of limitations on turnover claims arising under [§ 542].") (citing *Solow v. American Airlines, Inc. (In re Midway Airlines, Inc.)*, 221 B.R. 411, 458 (Bankr. N.D. Ill. 1998)). Therefore, there is no procedural default to sanction.

those earnings in the estate.  This alone invalidates any supposed exercise of the

bankruptcy court's equitable authority under § 105(a).[18]

Consequently, we conclude that the bankruptcy court erroneously excluded from

the estate earnings produced by $20,400 in nonexempt contributions to the Keogh

retirement plan, and remand for modification of the turnover order.

---

[18] Dr. Reinhart also suggests that a sanction is appropriate because Mr. Gladwell's claim to the earnings is barred the equitable doctrine of laches.  *Cf.* Aplee. Br. at 22 ("As an equitable court, the [b]ankruptcy [c]ourt could limit the Trustee's recovery based on his delay in prosecuting his objection to the Debtor's claimed exemption.").  Courts disagree whether laches can be asserted as an equitable defense to a turnover suit. *Compare, e.g., Boyer v. Carlton, Fields, Ward, Emmanuel, Smith & Cutler P.A. (Matter of USA Diversified Products, Inc.)*, 100 F.3d 53, 56 (7th Cir. 1996) (stating that equitable affirmative defenses are unavailable in a turnover action brought under § 542) *with, e.g., Wadsworth v. Viveros (In re Viveros)*, 456 B.R. 525, 528-29 (Bankr. D. Colo. 2011) (allowing assertion of laches as an affirmative defense to a turnover action).  We need not reach a decision on the availability of this defense, because any exercise of § 105(a) was invalid as contrary to the Bankruptcy Code and, in any event, Dr. Reinhart cannot satisfy the elements of laches.

"Laches consists of two elements: (1) inexcusable delay in instituting suit; and (2) resulting prejudice to [the] defendant from such delay."  *Brunswick Corp v. Spinit Reel Co.*, 832 F.2d 513, 523 (10th Cir. 1987) (citing *University of Pittsburgh v. Champion Products Inc.*, 686 F.2d 1040, 1044 (3d Cir. 1982)).  Laches does not apply here because Dr. Reinhart has not shown that he was prejudiced by Mr. Gladwell's alleged delay in prosecuting his objection.  Thus, even if we assume (without deciding) that Mr. Gladwell lacked diligence in bringing this case to trial and laches is available as an affirmative defense in a § 542 turnover action, equity does not support concocting a remedy inuring to the sole benefit of Dr. Reinhart.

## IV. CONCLUSION

We **AFFIRM** the bankruptcy court's decision to allow Dr. Reinhart's exemption of funds held in his Keogh plan, agreeing with its assessment that prepetition contributions amounting to $20,400 are not exempt from the bankruptcy estate. We **REVERSE** the bankruptcy court's turnover order, which did not include earnings produced by the $20,400 in preferential contributions as required by the Bankruptcy Code, and **REMAND** the case to the bankruptcy court for modification of that order in accordance with this decision.

IT IS SO ORDERED.

ENTERED FOR THE COURT


William J. Holloway, Jr.
Circuit Judge

24